Argued and submitted June 3, reversed and remanded July 24, 1996

# ROBERT MICHAEL SODERVICK,
*Appellant,*

*v.*

# G. H. BALDWIN,
Superintendent,
Eastern Oregon Correctional Institution,
*Respondent.*

(9408-05837; CA A90750)

921 P2d 979

Garrett A. Richardson argued the cause and filed the brief for appellant.

Katherine H. Waldo, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

**EDMONDS, J.**

Petitioner appeals the denial of his petition for post-conviction relief. ORS 138.650. He argues that the court erred in concluding that he was not prejudiced by his trial counsel's inadequate representation. We reverse and remand.

Petitioner was indicted for two counts of sodomy in the second degree and two counts of sexual abuse in the second degree. ORS 163.395; ORS 163.425. The indictment alleged that the crimes occurred between March 1, 1990, and October 6, 1990. A jury convicted petitioner on all four counts.

At the time of the offenses, the victim was 12 years old and a special education student. The victim testified at trial that he met petitioner sometime after spring vacation in the spring of 1990 at a local YMCA during an "open swim." The open swim periods were held every Friday afternoon. Petitioner befriended the victim, and according to the victim's testimony, they met at the pool every Friday afternoon for five consecutive Fridays, including their initial meeting. The victim testified that on the fourth Friday, petitioner sexually abused him in the pool locker room and that on the fifth Friday, petitioner sodomized him in the bathroom stall of the pool locker room. In the summer of 1990, the victim stopped swimming at the YMCA and instead began swimming at an outdoor pool. However, the victim returned to the pool at the YMCA in September 1990. During that fall, petitioner again sodomized and sexually abused him in the pool locker room.

At trial, petitioner conceded that he befriended the victim but denied that he had abused him. Specifically, petitioner testified that he was working April 6, 13, 20 and 27; May 18 and 25; and June 1 of 1990, and did not swim at the YMCA pool on those days. Although petitioner's trial counsel had the time records that would have corroborated petitioner's testimony and could have impeached the victim's testimony, those records were not introduced as evidence at the trial because counsel failed to subpoena the necessary witnesses to lay the proper foundation for their admission.

In his petition for post-conviction relief, petitioner alleges that he was denied adequate assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, section 11, of the Oregon Constitution because of his counsel's failure to subpoena witnesses who could have laid the proper foundation for admission of the time records into evidence. Petitioner also alleges that his defense counsel failed to

"[f]ully and properly investigate and prepare Petitioner's case, including but not limited to contacting prior employers and co-workers in an effort to obtain alibi information for Petitioner despite Petitioner's repeated request that counsel do so * * *

"(B) Subpoena alibi witnesses to testify at trial despite Petitioner's repeated request to do so[.]"

The post-conviction court denied petitioner's petition for relief and found in part:

"1.   The key issue in this case is whether defense counsel was inadequate because he did not introduce petitioner's time cards to support his dates of employment under the business records exception to the hearsay rule, and whether that failure constitutionally prejudiced the petitioner. This court finds that petitioner was not prejudiced.

"2.   The time cards covered only a portion of the period that petitioner was alleged to have committed the crimes. The time records did not cover the periods alleged in the indictment from March 1, 1990, through April 6, 1990; April 28, 1990 through May 17, 1990; and June 2 through October 6, 1990.

"3.   Petitioner did not advise his attorney that he wanted to raise an alibi defense because, as his attorney states, petitioner admitted to being with the victim during periods alleged in the indictment. * * *

"4.   Petitioner testified at the criminal trial to the same dates and times as indicated on the time cards.

"5.   Petitioner failed to show that he was prejudiced. The evidence of his guilt was overwhelming, particularly in light of the testimony of [a witness], who testified that petitioner admitted committing sexual acts while at a YMCA and that he was on trial for them. Because the State's case

against petitioner was so strong, receiving the time cards in evidence would not have changed the result."

It concluded:

"1. Petitioner has established that counsel was deficient in not properly introducing the time cards as a business record during the trial, otherwise petitioner was adequately represented by counsel. Petitioner, however, failed to establish by a preponderance of the evidence that there is a reasonable probability that, but for defense counsel's deficiency, the result would have been different."

We first consider whether petitioner was denied his rights under the Oregon Constitution.[1] The post-conviction court ruled that petitioner established that his trial counsel's representation was inadequate. Nevertheless, it concluded that he was not prejudiced because he failed to establish that "but for defense counsel's deficiency, the result would have been different." The trial court's decision was rendered on October 20, 1995. On September 28, 1995, the Supreme Court had decided *Stevens v. State of Oregon*, 322 Or 101, 110, 901 P2d 1137 (1995), in which it clarified that a petitioner seeking post-conviction relief need not show a substantial probability that, but for defense counsel's deficiency, the result of the criminal trial would have been different. Rather "prejudice," for purposes of post-conviction relief, "consists of those acts or omissions 'which would have a tendency to affect the result.'" *Id.* at 110 n 5, quoting *Krummacher v. Gierloff*, 290 Or 867, 872, 627 P2d 458 (1981).

In *Ashley v. Hoyt*, 139 Or App 385, 395-96, 912 P2d 393 (1996), the post-conviction court applied the same legal standard of prejudice that the post-conviction court applied in this case. We explained:

"Given *Stevens'* intervening reinstruction on the standard of prejudice, we are faced with the choice of either: (1) remanding the inadequate assistance claim for the trial court to apply the 'tendency' standard; or (2) applying that

---

[1] Article I, section 11, of the Oregon Constitution provides, in part:

"In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel[.]"

In the light of our disposition under section 11, we do not reach petitioner's other arguments.

standard ourselves, without remand. Either course has principled merit. The first comports with our frequent practice of affording trial courts the initial opportunity to apply a new, clarified, or refined legal standard. The second— which is the course the Supreme Court took in *Stevens*— recognizes the practical exigencies of post-conviction relief: The ultimate determination of prejudice is a matter of law and not of fact * * * and, if the trial court has rendered findings on all historical facts material to assessing prejudice, this court is fully competent to determine whether petitioner has suffered prejudice of a constitutional magnitude. In those circumstances remand may only serve to delay the ultimate availability of post-conviction relief and, in so doing, prolong a petitioner's incarceration." *Id.* at 396. (Citations omitted; footnotes omitted.)

■ In this case, we make the first choice. In *Ashley*, the inadequate assistance of counsel consisted of the trial defense counsel's refusal to allow the petitioner to testify. We noted that the post-conviction court had rendered all findings material to the "tendency to affect" standard, and had found what the petitioner's testimony would have been, had she testified. Consequently, we chose to apply the correct standard ourselves without remand. In this case, the post-conviction court has not rendered all findings material to assessing prejudice and we therefore choose to afford the trial court the opportunity to apply the clarified legal standard for the reasons that follow.

■ Although there is no evidence in the record as to when the victim's spring vacation occurred, the jury in petitioner's criminal trial could have inferred that spring vacation occurred during the month of March. In the light of the victim's testimony that he met petitioner after spring vacation in the spring of 1990 on five consecutive Fridays, the fact that petitioner worked on five Fridays in April, two Fridays in May and the first Friday in June is probative of the issue of the victim's credibility.[2] Moreover, another witness, Tammy McClain (an employee of the YMCA), testified that she saw the victim at the pool "almost very Friday" and petitioner was

---

[2] The state argues that petitioner never argued that the evidence was admissible for purposes of impeachment. Our review of the record indicates to the contrary.

there "most every week" from April until summer. Thus, the time cards could have served to impeach her testimony as well as to corroborate petitioner's testimony. Also, the prosecutor during closing argument in the criminal trial asserted to the jury that petitioner had lied on the witness stand when he testified he was not at the pool on the days that the victim was abused and emphasized that, because petitioner lied about that fact, his denial of abuse was also a lie.

Juxtaposed against petitioner's own testimony, the state offered evidence of an admission made by petitioner that he had engaged in sexual contact with the victim, in addition to the testimony of McClain and the victim. The state also offered the testimony of another YMCA worker who had observed petitioner and the victim occupying a toilet stall in the locker room in October 1990.

The state argues that we should affirm because "[e]ven if the time records had been introduced into evidence, the jury would likely conclude that [the victim] might have been mistaken about some specific dates but that his testimony describing the acts within the broad time framework alleged in the indictment was accurate." Therefore, the state concludes that the admission of the time records into evidence could not have tended to affect the jury verdicts, particularly those regarding the 1990 fall incidents.

We are not persuaded by the state's argument. The credibility of the victim was central to the state's case, and the state's attack on petitioner's veracity regarding the spring and fall allegations is closely intertwined. The trial court made no findings about whether the time cards could have had a tendency to affect the jury's determination of the credibility of the state's witnesses as well as of petitioner. In the light of the nature of the issues and the lack of findings, we conclude that this is a case that must be remanded so that the trial court can reconsider the evidence under the proper legal standard.

Reversed and remanded.