Argued and submitted May 2, decision of Court of Appeals and judgment of circuit court reversed; case remanded to circuit court September 28, 1995

## CLIFFORD WAYNE STEVENS,
*Petitioner on Review,*

*v.*

## STATE OF OREGON,
*Respondent on Review.*

(CC 16-92-04672; CA A80158; SC S41633)

902 P2d 1137

Gary D. Babcock, Salem, argued the cause and filed the petition on behalf of petitioner on review.

Ann Kelley, Assistant Attorney General, Salem, argued the cause on behalf of respondent on review. With her on the brief on the merits were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

UNIS, J.

## UNIS, J.

The issue in this case is whether petitioner was denied adequate assistance of trial counsel in violation of Article I, section 11, of the Oregon Constitution and is, therefore, entitled to post-conviction relief, on the ground that his trial counsel failed to interview certain potential witnesses and chose not to have petitioner examined medically to determine whether he was impotent at the time of the alleged rape. We answer that question in the affirmative.

On June 8, 1990, petitioner was indicted for rape in the first degree, ORS 163.375 (1989).[1] The indictment alleged that petitioner raped the complaining witness, a 12-year-old girl with a learning disability, while driving her to school on March 5, 1990. Petitioner's trial to the court essentially was a credibility contest between the complaining witness and petitioner.

Petitioner was the landlord and a friend of the complaining witness's family, and he drove the complaining witness to and from school regularly. The complaining witness testified that, on the way to the school one day, petitioner stopped his van on the side of the road, got out, came around to her side of the van, and unfastened his pants. The complaining witness further testified that, while standing on the ground next to the vehicle, petitioner held the complaining witness's hands to his "privates" and put his "privates" inside her "privates" a few centimeters while she continued to sit on the seat of the van. She testified that the alleged incident lasted for about five minutes, with petitioner maintaining an erection. The complaining witness also testified that petitioner then dropped her off at school, where she attended three classes from 8:40 a.m. until 11:00 a.m., and that she

---

[1] ORS 163.375 (1989), the statute in effect at the time of the alleged crime, provided:

"(1) A person who has sexual intercourse with a female commits the crime of rape in the first degree if:

"(a) The female is subjected to forcible compulsion by the male;

"(b) The female is under 12 years of age;

"(c) The female is under 16 years of age and is the male's sister, of the whole or half blood, his daughter or his wife's daughter; or

"(d) The female is incapable of consent by reason of mental defect, mental incapacitation or physical helplessness.

"(2) Rape in the first degree is a Class A felony."

reported the alleged incident that day to her physical therapist and to Pattison, one of her teachers. The complaining witness's parents testified that, when the complaining witness came home, she was agitated, said she had a headache, and rested for a few hours before dinner. A physician called by the state testified that, when he examined the complaining witness two days after the alleged incident, he found no physical evidence of rape or trauma.

Petitioner testified that he had no sexual contact with the complaining witness. A criminalist called by the defense testified that laboratory tests on the jeans and underpants worn by the complaining witness on the day of the alleged incident revealed nothing of significance. Trial counsel made a visual demonstration of petitioner's van to the trial court. Trial counsel asserted that, due to the height of the seat of the van, it was unlikely that the alleged incident could have occurred as described.

The trial court found petitioner guilty of the lesser included offense of sexual abuse in the second degree, ORS 163.415 (1989).[2] On appeal, the Court of Appeals affirmed petitioner's conviction without opinion. *State v. Stevens*, 111 Or App 452, 826 P2d 649 (1992).

Petitioner sought post-conviction relief pursuant to ORS 138.530,[3] asserting that his trial counsel was constitutionally inadequate due to his failure to investigate the case

---

[2] ORS 163.415 (1989) provided:

"(1) A person commits the crime of sexual abuse in the second degree if the person subjects another person to sexual contact; and

"(a) The victim does not consent to the sexual contact; or

"(b) The victim is incapable of consent by reason of being under 18 years of age, mentally defective, mentally incapacitated or physically helpless.

"(2) In any prosecution under subsection (1) of this section it is an affirmative defense for the defendant to prove that:

"(a) The victim's lack of consent was due solely to incapacity to consent by reason of being under 18 years of age; and

"(b) The victim was more than 14 years of age; and

"(c) The defendant was less than four years older than the victim.

"(3) Sexual abuse in the second degree is a Class A misdemeanor."

[3] ORS 138.530 provides in part:

"(1) Post-conviction relief pursuant to ORS 138.510 to 138.680 shall be granted by the court when one or more of the following grounds is established by the petitioner:

properly. Specifically, petitioner challenged his trial counsel's failure to pursue witnesses who might have impeached the complaining witness and his decision not to obtain a medical diagnosis that petitioner was impotent at the time of the alleged rape.

At the post-conviction hearing, petitioner's trial counsel testified that he had not interviewed any members of the complaining witness's school's staff or her classmates. The following testimony by members of the school's staff and by the complaining witness's classmates was presented at the post-conviction hearing, but not at the trial.

Two teachers and a teacher's assistant, who conducted the complaining witness's classes on the day of the alleged incident, testified as to the complaining witness's behavior after the alleged rape. Pattison testified that, contrary to the complaining witness's trial testimony, the complaining witness had not reported the incident to him on the day of the alleged rape. He explained that the complaining witness was in his class with about ten other learning disabled students and that the class was supervised by him, another teacher, and a teacher's assistant who facilitated intensive guidance and study. Pattison stressed that the teachers took great care in trying to identify any signs of abuse or mental trauma in the students, and he stated that the complaining witness behaved normally on the day of the alleged rape.

Bauder, another teacher who supervised the complaining witness on the day of the alleged incident, testified that the complaining witness generally confided in her about the complaining witness's home life and problems with her mother, but that she did not report the alleged rape to her on that day. Bauder also testified that there was a stringent school policy in place that required the teachers to report immediately any suspected mistreatment or abuse of a student to the school counselor or administrator and that she noticed nothing out of the ordinary on that day.

Taylor, a teacher's assistant who supervised the complaining witness on the day of the alleged rape, testified

"(a) A substantial denial in the proceedings resulting in petitioner's conviction, or in the appellate review thereof, of petitioner's rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void."

that the complaining witness did not report the incident to her and that the complaining witness behaved normally on that day.

Four of the complaining witness's classmates testified at the post-conviction hearing. Each classmate related a different account of the alleged incident given by the complaining witness. S testified that the complaining witness told him that petitioner "hurt" her at petitioner's home and that her mother was going to sue petitioner for "a lot of money." S testified that he did not know when that conversation took place. M testified that the complaining witness told him that petitioner had raped her and scraped her with a "tool" and that she was going to sue petitioner for money. M also testified that he could not specify a time when that conversation took place. E testified that, on the day after the alleged rape, the complaining witness told her that petitioner had hurt her at his house. H testified that the complaining witness had told her at least two years before the alleged incident that a masked man, possibly petitioner, had grabbed her, taken her into his house, and raped her.

Petitioner also offered evidence at the post-conviction hearing about his claim of impotence. Petitioner testified that he told his trial counsel before trial that he was incapable of committing the rape because he had been impotent for several years. As previously stated, the complaining witness testified at trial that petitioner maintained an erection during the alleged rape. At the post-conviction hearing, petitioner offered an affidavit from a urologist regarding the urologist's medical examination of petitioner. The urologist opined that petitioner had been impotent for many years and was unable to attain an erection at the time of the alleged rape.

Petitioner's trial counsel testified at the post-conviction hearing that petitioner's conviction of a lesser included offense was proof that his legal assistance was adequate. He explained that, after he had read the police reports, he interviewed a number of witnesses and twice went to the scene of the alleged incident. However, trial counsel did not identify those witnesses, and he conceded that he did not interview any of the complaining witness's teachers or classmates. Trial counsel also testified that,

because he believed that petitioner's trial would be a credibility contest between petitioner and the complaining witness, his theory of defense was simply that petitioner's word would have to prevail over the word of the complaining witness. Trial counsel then testified that, in following his defense theory, his failure to obtain a medical diagnosis to determine whether petitioner was impotent at the time of the alleged rape, as petitioner had advised him, was a tactical decision, because he believed that presenting such evidence to the trial court would risk petitioner's credibility.

At the conclusion of the hearing, the post-conviction court entered a judgment denying relief. The court found that petitioner had been provided with adequate assistance of counsel, because trial counsel did not lack reasonable skill and judgment in defending petitioner. Petitioner appealed. The Court of Appeals affirmed. *Stevens v. State*, 129 Or App 533, 879 P2d 893 (1994). That court held that, although petitioner's trial counsel had failed to exercise reasonable professional skill and judgment by not interviewing the complaining witness's teachers and classmates, petitioner had failed to demonstrate that he had been "substantially prejudiced" by trial counsel's inadequacy. *Id.* at 537. The court further held that petitioner's trial counsel was not constitutionally inadequate for failing to present medical evidence that petitioner was impotent at the time of the alleged rape, because the court could not say as a matter of law that trial counsel "did not make a tenable tactical choice." *Id.* at 538.

We allowed petitioner's petition for review. Petitioner asserts that trial counsel's failure to interview potential witnesses and his decision not to arrange for a medical examination of petitioner constituted inadequate assistance of counsel in violation of his right to counsel under Article I, section 11, of the Oregon Constitution and under the Sixth Amendment to the Constitution of the United States.[4]

As noted, ORS 138.530(1)(a) provides that post-conviction relief shall be granted when a petitioner establishes a

---

[4] The Sixth Amendment to the Constitution of the United States provides in part:

"In all criminal prosecutions, the accused shall enjoy the right to * * * have the Assistance of Counsel for his defence."

The Sixth Amendment is made applicable to the states through the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. *Gideon v. Wainwright*, 372 US 335, 342-45, 83 S Ct 792, 9 L Ed 2d 799 (1963).

"substantial denial" of his or her "rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void." We first consider whether petitioner was denied his rights under the Oregon Constitution. *See State v. Kennedy*, 295 Or 260, 666 P2d 1316 (1983) (setting forth methodology).

■■ Article I, section 11, of the Oregon Constitution provides in part:

"In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel[.]"

Article I, section 11, of the Oregon Constitution "call[s] for an adequate performance by counsel of those functions of professional assistance which an accused person relies upon counsel to perform on his behalf." *Krummacher v. Gierloff*, 290 Or 867, 872, 627 P2d 458 (1981). To be entitled to post-conviction relief on the basis of inadequate assistance of counsel, a petitioner must show, "by a preponderance of the evidence, facts demonstrating that trial counsel failed to exercise reasonable professional skill and judgment and that petitioner suffered prejudice as a result." *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991).

■ There is no single, succinct, clearly defined standard for determining adequacy of counsel. *Krummacher*, 290 Or at 874. Rather, there merely are guidelines for the courts to use in the determination of each case. The Oregon Constitution does not give a criminal defendant the right to a perfect defense, but "it requires that the lawyer do those things reasonably necessary to diligently and conscientiously advance the defense." *Id.* Thus, while an appellate court usually will not second-guess the tactical decisions of a lawyer in the course of representing a criminal defendant, the exercise of reasonable professional skill and judgment generally requires an investigation that is legally and factually appropriate to the nature and complexity of the case so that the lawyer is equipped to advise and represent the client in an informed manner. *Id.* at 875. We therefore must consider whether petitioner's trial counsel's investigation was legally and factually appropriate to this case.

■ In this case, there were no other witnesses to the alleged rape and no physical evidence of abuse or trauma.

The case therefore necessarily turned on the credibility of the complaining witness and of petitioner. Petitioner's trial counsel failed to interview several witnesses whose testimony might well have had bearing on the complaining witness's credibility. The complaining witness's teachers and classmates were the first people with whom she had contact after the alleged rape. Their testimony would have impeached the complaining witness with her inconsistent accounts of the alleged rape. Their testimony also would have shown that the complaining witness mentioned repeatedly that she wanted to sue petitioner, giving her a possible motive to accuse petitioner falsely. Trial counsel's failure to interview the complaining witness's teachers and classmates prevented him from discovering those potential witnesses.

■   In investigating a case, a lawyer inevitably is faced with choices as to what avenues of investigation to pursue. A "tactical decision" in the course of an investigation is a conscious choice by a lawyer either to take or to omit some action on the basis of an evaluation of the nature and complexity of the case, the likely costs and potential benefits of the contemplated action, and other factors. But the fact that a lawyer has made a "tactical decision" does not mean that the lawyer's choice meets the constitutional standard for adequate assistance of counsel. Indeed, this case illustrates the point. Considering the nature and complexity of this case, trial counsel's choice not to interview the complaining witness's teachers and classmates was a "tactical decision," but it did not result in adequate representation of petitioner. The complaining witness's statements to classmates suggested a possible motive to fabricate (*i.e.*, obtain money through litigation). The teachers' testimony would have impeached the testimony of the parents of the complaining witness. The conflicting accounts to classmates regarding the location of the alleged rape would have impeached the complaining witness's account at trial. Medical evidence of impotence would have contradicted part of the complaining witness's testimony.

Trial counsel's decision not to interview potential witnesses at the complaining witness's school was not a choice that was based on a reasonable evaluation of the likely costs and potential benefits of pursuing the investigation.

Instead, it appears that trial counsel simply relied on the police report to identify the material witnesses.

■■ Taken together, the available information that trial counsel failed to gather could have a significant impact on the complaining witness's credibility. We conclude that trial counsel, in the course of representing petitioner, failed to exercise reasonable professional skill and judgment. That conclusion does not, however, end our inquiry. Not all lapses of professional skill and judgment entitle a defendant to post-conviction relief. Instead, "only those acts or omissions by counsel which have a *tendency to affect the result* of the prosecution can be regarded as of constitutional magnitude[.]" *Trujillo*, 312 Or at 435, *quoting Krummacher*, 290 Or at 883 (emphasis added).[5]

We therefore must examine whether trial counsel's lack of reasonable professional skill and judgment prejudiced petitioner. *Trujillo*, 312 Or 436-37. We have no hesitancy in holding that it did. As we have explained fully elsewhere, both aspects of trial counsel's inadequate performance denied petitioner highly valuable impeaching evidence from disinterested witnesses that would have called into question pivotal testimony of the complaining witness. This was evidence clearly having "a tendency to affect the result of the prosecution" of the case.

We conclude that petitioner was prejudiced by trial counsel's inadequate assistance. Accordingly, we conclude that petitioner was denied adequate assistance of counsel in violation of Article I, section 11, of the Oregon Constitution. He is entitled to post-conviction relief as provided in ORS 138.520.[6]

---

[5] The Court of Appeals seems to have misapplied the test stated in *Krummacher v. Gierloff*, 290 Or 867, 627 P2d 458 (1981), by requiring petitioner to prove that "substantial prejudice" resulted from trial counsel's inadequacy. *Stevens v. State of Oregon*, 129 Or App 533, 537, 879 P2d 893 (1994). The court described "substantial prejudice" as omissions by trial counsel that "would have affected the outcome of the case." *Id.* We previously held, and now reaffirm, that the requisite "prejudice" consists of those acts or omissions "which would have a tendency to affect the result." *Krummacher*, 290 Or at 883.

[6] Because we decide this case under Article I, section 11, of the Oregon Constitution, we need not consider petitioner's arguments under the Sixth Amendment to the Constitution of the United States.

The decision of the Court of Appeals and the judgment of the circuit court are reversed. This case is remanded to the circuit court for further proceedings.