Argued and submitted July 21, affirmed November 25, 1998

# CRUZ CASTILLO MARTINEZ,
## *Appellant,*

*v.*

# G. H. BALDWIN,
## Superintendent,
## Eastern Oregon Correctional Institution,
### *Respondent.*

## (CV94-0685; CA A94640)

972 P2d 367

Harrison Latto argued the cause and filed the brief for appellant.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Edmonds and Haselton, Judges.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

Petitioner appeals from the judgment denying his petition for post-conviction relief in which he alleged that he was denied adequate assistance of trial counsel. We affirm.

Petitioner was convicted by a jury of two counts of rape in the first degree, ORS 163.375(1)(a), (c), and two counts of sexual abuse in the second degree, ORS 163.425. The victim is petitioner's daughter. Petitioner first met his daughter when she was 12 years old. The victim moved in with petitioner's mother (her paternal grandmother) the summer before her freshman year of high school. The victim claimed that the events for which petitioner was convicted occurred in petitioner's mother's home. The victim alleged that, on two separate occasions, petitioner entered her bedroom at night when he was drunk and forced her to engage in sexual conduct. Petitioner did not live at his mother's house during this time and claimed that he did not visit the house at night.

■ In his petition for post-conviction relief, petitioner alleged that he was denied adequate assistance of counsel under the Sixth and Fourteenth Amendments to the Constitution of the United States and under Article I, section 11, of the Oregon Constitution. ORS 138.530.[1] The post-conviction court denied relief. On review of a denial of post-conviction relief, we are bound by the post-conviction court's findings, if supported by evidence in the record, but we examine anew its constitutional determinations. *Krummacher v. Gierloff*, 290 Or 867, 869, 627 P2d 458 (1981); *Davis v. Armenakis*, 151 Or App 66, 69, 948 P2d 327 (1997), *rev den* 327 Or 83 (1998).

■ To prove inadequate assistance of counsel under Article I, section 11, of the Oregon Constitution, petitioner

---

[1] ORS 138.530 provides, in part:

"(1) Post-conviction relief pursuant to ORS 138.510 to 138.680 shall be granted by the court when one or more of the following grounds is established by the petitioner:

"(a) A substantial denial in the proceedings resulting in petitioner's conviction, or in the appellate review thereof, of petitioner's rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void."

must show by a preponderance of the evidence that "counsel failed to exercise reasonable professional skill and judgment and that petitioner suffered prejudice as a result." *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991). Prejudice occurs when counsel's deficient performance has "a tendency to affect the result of the prosecution" of a petitioner's underlying criminal case. *Stevens v. State of Oregon*, 322 Or 101, 110, 902 P2d 1137 (1995). To establish ineffective assistance of counsel under the Sixth Amendment to the United States Constitution, a petitioner must prove that counsel's assistance was unreasonable and that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Chew v. State of Oregon*, 121 Or App 474, 477, 855 P2d 1120, *rev den* 318 Or 24 (1993), *quoting Strickland v. Washington*, 466 US 668, 104 S Ct 2052, 80 L Ed 2d 674 (1984).

On appeal, petitioner argues that he received constitutionally ineffective assistance of counsel when his attorney failed to call petitioner's mother as a witness. At the post-conviction hearing, petitioner testified that his mother could have testified at his trial as to the conditions in his parents' house. He claims that she could have testified that he was not at his parents' house at the time that the incidents were alleged to have occurred, because "they are the principal parties of [that residence]" and "they know what goes on in their place at all times of the day." According to petitioner, his mother also could have testified that the room where the victim was staying was right across the hall from his parents' bedroom and that the victim's bedroom is locked, bolted from the inside, and there is no way anybody can go in and out of that room without his mother knowing it.

In addition to being denied the benefit of his mother's exculpatory testimony, petitioner also argues that defense counsel's opening statements, along with the testimony that was presented at trial, set up the expectation that his mother would testify, thereby making her failure to testify highly conspicuous. At trial, there was testimony that the bedroom that the victim used at petitioner's mother's house was not far from his mother's bedroom and that the victim's bedroom could be locked from the inside. Petitioner's brother testified that their mother was out of bed to use the bathroom

several times a night, that she did not sleep soundly and that she slept with the door open. Both petitioner and his sister testified that the house was kept locked at night, that petitioner did not have a key to the house during the time in question and that he visited during the day. Thus, petitioner argues, in light of the evidence of his mother's knowledge of what went on in her house at night in the vicinity of the victim's bedroom, the fact that his mother did not testify was particularly damaging.

In his affidavit, petitioner's counsel stated that he believed petitioner's mother would have testified that petitioner could not have committed the crimes as alleged by the victim, that she would have known if petitioner had come into her house at night during the periods in which the crimes were allegedly committed, and that petitioner did not visit her house at night during those times. However, counsel chose not to call the mother as a witness, because he was afraid that she would be impeached by evidence that petitioner's brothers had been convicted of similar sex crimes against their daughters. In his affidavit, counsel stated:

> "Because the court refused to rule generally that the brothers' convictions were inadmissible, I was left with a tactical decision. If I had presented the mother's testimony, I would have risked the possibility that the state could introduce the brothers' convictions to impeach the mother's testimony. I believed the prejudicial effect of that evidence would have been tremendous. Ultimately, I decided that the risk was too great and therefore did not call [petitioner's] mother as a witness."

Defense counsel's concern stemmed from the fact that the trial court refused to make a blanket ruling declaring that evidence of the brothers' convictions was inadmissible and, instead, required that the evidence be presented in an offer of proof before ruling in each instance.

Petitioner argues that evidence of his brothers' convictions was, in fact, inadmissible, and, therefore, defense counsel's concerns were unreasonable. Petitioner's argument is two-pronged. He first argues that, at trial, defense counsel could have obtained a ruling on the admissibility of evidence of his brothers' convictions to impeach his mother in the form

of an offer of proof outside the presence of the jury, *before* calling her as a witness. If petitioner is correct, defense counsel could have sought to exclude the evidence with no risk. On petitioner's theory, if the evidence were ruled inadmissible, counsel could have safely called petitioner's mother as a witness; or, in the alternative, if the evidence had been ruled admissible in an offer of proof *before* counsel put her on the stand, he could have chosen not to call her, thereby still preventing the prejudicial evidence from coming before the jury. However, respondent argues that the record is not clear as to whether that option was, in fact, available to defense counsel. The record does indicate that the prosecutor would have had to present his impeachment evidence in an offer of proof outside the presence of the jury, but traditionally that would occur *after* petitioner's mother had testified for the defense, so that if the impeachment evidence were ruled admissible, defense counsel would not have been able to keep it out.

Thus, whether defense counsel believed that he could have obtained a ruling on the admissibility of the evidence before putting petitioner's mother on the stand is a question of fact to be determined by the post-conviction court. The post-conviction court here did not rule specifically on that point. However, in its findings of fact, the court stated:

> "Counsel made a reasonable tactical decision not to call petitioner's parents as witnesses. Counsel properly was concerned about opening the door to prejudicial evidence that other family members had been convicted of similar crimes."

When the trial court does not make findings on all facts, and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the ultimate conclusion. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). Here, the court could not have found that defense counsel *properly* was concerned about opening the door to the prejudicial impeachment evidence if it found that defense counsel could have gotten a ruling on the admissibility of the evidence before putting petitioner's mother on the stand. Therefore, we assume that the post-conviction court implicitly found that that

option was not available to defense counsel. We are bound by that finding.

■     Petitioner next argues that, even if defense counsel could not get a ruling on the admissibility of the evidence before putting his mother on the stand, the fact that the evidence was inadmissible, and that clear indications existed that the trial court would have found the evidence inadmissible, made the risk of calling his mother virtually nonexistent. Therefore, petitioner contends, defense counsel's decision was unreasonable. He points out that, when the prosecutor did offer evidence of his brother's convictions to impeach him in an offer of proof outside the jury's presence, the trial court "quickly, unwaveringly, and unequivocally sustained the defense objection to that evidence." Petitioner concludes, therefore, that the trial court also would have ruled the same evidence inadmissible to impeach his mother. Respondent argues that we are bound by the trial court's finding that "[c]ounsel made a reasonable tactical decision not to call petitioner's parents as witnesses," because there is evidence in the record to support it.

What counts as a reasonable tactical decision as opposed to an unacceptable blunder is a difficult determination. In *Krummacher*, the Supreme Court noted that standards for measuring ineffective assistance of counsel are necessarily general and "a degree of subjectivity in application cannot be avoided." 290 Or at 873. Furthermore, the most difficult assessments are those involving decisions made "in the course of representing a defendant at trial." *Id.* at 875. Each claim must be assessed in the totality of the circumstances. *Strickland*, 466 US at 688; *Carias v. State of Oregon*, 148 Or App 540, 543, 941 P2d 571 (1997).

In *Strickland*, the United States Supreme Court stated:

> "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance

requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." 466 US at 689 (citations omitted).

In laying out the standard of acceptable advocacy in *Krummacher*, the Oregon Supreme Court noted:

"The constitution gives no defendant the right to a perfect defense—seldom does a lawyer walk away from a trial without thinking of something that might have been done differently or that he would have preferred to have avoided. Adequacy of assistance of counsel * * * allows for tactical choices that backfire, because, by their nature, trials often involve risk." 290 Or at 875.

Here, the prosecutor made repeated efforts to admit the prejudicial evidence of petitioner's brothers' convictions and his mother's behavior in connection with those convictions. At trial, the prosecutor first attempted to introduce evidence of the brothers' convictions during his cross-examination of petitioner's wife. On defense counsel's objection, an offer of proof was made outside the jury's presence, during which the witness testified that she did not have any knowledge of the events to which the prosecutor referred. At that point, the prosecutor argued that he was entitled to explore that area during the testimony of one of petitioner's brothers who had been convicted and stated that he intended to examine petitioner's mother on the subject. Defense counsel then made a motion *in limine* to exclude the evidence. The trial court sustained defense counsel's objection to the admission of evidence on the subject from petitioner's wife but refused to grant defense counsel's motion.

The following day, defense counsel reasserted his motion, and the trial court again denied it, stating that it was "not going to give a blanket order." The court instructed the attorneys not to ask any questions in the area before first making an offer of proof outside the jury's presence. Defense counsel complained that the defense was effectively being denied a witness. He explained that the prejudicial nature of the evidence that the prosecutor hoped to elicit from petitioner's mother was so strong that he did not want to call her as a witness if there was a possibility that, after an offer of proof was made, that line of questioning would be allowed. The prosecutor again raised the issue of the brothers' convictions during his cross-examination of petitioner, in an offer of proof outside the jury's presence. The court ruled that the evidence could not be introduced. Each time that the prosecutor raised the issue of the convictions, he directed his comments to petitioner's mother's behavior, stating that she had testified on behalf of petitioner's brothers, "saying it didn't happen, saying it's the girls' fault, saying that they were sluts," and that she was really the appropriate witness with whom to explore the matter. The prosecutor made it abundantly clear that he intended vigorously to pursue the matter with petitioner's mother despite his previous failures to introduce the evidence.

Petitioner claims that, because the trial court ruled that the evidence the prosecutor sought to introduce was inadmissible to impeach him and his wife, it would also rule it inadmissible to impeach his mother. However, that is not necessarily true. The trial court's refusal to issue a "blanket ruling" excluding evidence of the brothers' convictions implied that it might find the evidence admissible under certain circumstances or for certain purposes. The disputed evidence was clearly more relevant to impeach petitioner's mother than to impeach petitioner or his wife because much of it was evidence of the mother's behavior in similar circumstances. Defense counsel reasonably was wary of the possibility of an adverse ruling if he put petitioner's mother on the stand.

Petitioner argues that, because evidence of his brothers' convictions was, in fact, inadmissible, defense

counsel's decision not to call his mother to testify was unreasonable. However, there are many difficult decisions that must be made in the heat of battle. The record shows that defense counsel did consider attempting to make an offer of proof but that he decided against it. There is no doubt that the admission of evidence that petitioner's brothers had also been convicted of raping their daughters would have been highly damaging to his case. We will not second-guess defense counsel in this case. We find no error in the determination of the post-conviction court that counsel's decision not to call petitioner's mother to testify was a reasonable tactical decision under the circumstances of this case. Petitioner was not denied adequate assistance of counsel.

Affirmed.