Argued and submitted January 6, reversed March 1, 2000

## DANNY JAMES HARRINGTON,
*Respondent,*

*v.*

## Dan JOHNSON,
Superintendent,
Snake River Correctional Institution,
*Appellant.*

(980129423M; CA A104370)

997 P2d 283

Douglas F. Zier, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Kristen L. Winemiller argued the cause for respondent. With her on the brief was Tennyson & Winemiller.

Before De Muniz, Presiding Judge, and Wollheim and Brewer, Judges.

BREWER, J.

**BREWER, J.**

Defendant, the superintendent of the Snake River Correctional Institution, appeals from a trial court judgment granting post-conviction relief to petitioner on ineffective assistance of counsel grounds. We reverse.

In 1995, petitioner was charged with 12 counts of sodomy in the first degree. The indictment alleged that petitioner abused his son, N, over a period of three years, beginning when the child was seven and ending at age ten. At the time of the indictment, N was 13 years old. Because there was no physical evidence implicating petitioner, his trial counsel (counsel) recognized that petitioner's chance for acquittal depended on whether the jury found him or N more credible. Therefore, counsel concluded that petitioner would have to testify on his own behalf. Petitioner's need to testify was complicated by the fact that he had previously been convicted of six separate counts of sexual abuse committed against two adolescent girls, A and B, who were friends of N. Petitioner was serving prison sentences for those convictions at the time of trial on the present charges. Counsel realized that when petitioner took the stand, his prior sex abuse convictions would be brought to the jury's attention.

Because it was inevitable that the jury would learn of the previous convictions, counsel decided to disclose them to the jury in his opening statement:

> "[B]ecause [petitioner] takes the stand, you're going to learn that [petitioner] does have a prior conviction for sexual abuse in the first degree. He has six convictions involving two girls who were, at the time, about the age that [N] is now. I believe twelve and thirteen. You're going to see that at that time, even when these disclosures were out, even when [petitioner] admitted that he had done that to those two girls, that [N] didn't make any disclosures, and that [he] still wanted to be around his father."

Counsel's strategy was to contrast the underlying facts of the previous crimes with those alleged in the current indictment and to urge that those differences supported the inference that the current charges were unfounded. Counsel apparently thought it especially significant that, when confronted

with the allegations of A and B, petitioner had quickly broken down and confessed, in contrast to his vehement denials of N's allegations. Counsel also attempted to establish that N was motivated to fabricate charges against petitioner because he was angry with his father for abusing A and B and was frustrated by the separation caused by petitioner's resulting imprisonment. He suggested that N's years-long delay in alleging that petitioner had abused him, as well as behavior problems N was currently experiencing, could best be explained in that light.

During examination of the state's witnesses, both defense counsel and the prosecutor elicited a great deal of testimony about the previous convictions. While cross-examining Detective Johnson, the investigator in the earlier case, counsel elicited testimony that petitioner had admitted the earlier offenses and was emotional in doing so.

Later, the prosecutor elicited testimony regarding petitioner's previous convictions on redirect examination of Valerie Foster, a psychological counselor who testified as an expert witness for the state:

"Q. * * * [Y]ou testified that a child would act out when the trauma [of sexual abuse] comes up again, or when the memory of it comes up again?

"A. Yes.

"Q. Could that memory be induced by getting information that their father, the person who offended them, actually did sexually abuse some other people?

"A. Oh, yes, yeah."

On recross-examination of Foster, counsel sought an admission that N's aggressive behavior, which Foster attributed to sexual abuse, could instead be due to trauma from his parents' divorce and petitioner's incarceration on the earlier charges.

Following Foster's testimony, petitioner's ex-wife, Sherry Harrington, testified under cross-examination by counsel to various details regarding petitioner's convictions and their effect on N. Counsel attempted to establish that N was embarrassed and upset with petitioner for what he had

done to the girls. On redirect examination of the witness, the prosecutor also mentioned the convictions:

> "Q. * * * Knowing that [petitioner] had been convicted of the previous crimes involving the two girls, why did you allow [N] to go back [to petitioner's house]?
>
> "A. I don't really know * * *."

Sherry Harrington also testified, on further recross-examination, that N visited petitioner after he pled guilty in the earlier cases.

N testified on direct examination by the prosecutor that A and B were his close friends, that he had brought them to petitioner's house, and that he knew petitioner had "touch[ed]" the girls, but did not know the extent of the abuse until after petitioner was arrested in the earlier case. He testified that he did not like the fact that petitioner had molested A and B. N also testified about the prison sentence petitioner had received for abusing A and B.

On cross-examination of N, counsel elicited extensive testimony to the effect that he had not had problems in school or with the authorities until petitioner went to prison on the earlier charges. Counsel also tried to establish that N's problems were the product of embarrassment and anger toward petitioner. N denied those assertions.

Following the conclusion of the state's case, counsel called petitioner's father, Dayrl Harrington, as a witness. Dayrl stated that he loved petitioner, to which counsel replied, "And you know about his prior offense with those two girls?" Petitioner's father responded, "Yes, sir."

On direct examination of petitioner, counsel brought out the details of the prior convictions before eliciting any other testimony. Petitioner admitted the prior convictions, gave the ages of A and B, and testified that he lost his composure and confessed when confronted with their accusations. Petitioner also testified that he had not confessed in this case because N's allegations were untrue.

On cross-examination of petitioner, the state attempted to elicit a more detailed account of petitioner's previous crimes. Petitioner's counsel objected, and the trial court

sustained the objection. Later, during cross-examination, petitioner admitted that he had told N that he expected to be placed on probation and receive sex offender treatment for abusing A and B. He also acknowledged that he had been sentenced to prison instead and that he didn't like prison.

On redirect, counsel elicited testimony from petitioner to establish the length of the sentence, 40 months, that he was serving for the previous convictions. On recross, the prosecutor engaged petitioner in a lengthy discussion of his chances for early release.

In closing argument, the prosecutor commented:

"Defense Counsel, another argument Defense Counsel made in his opening statement was, basically, and you've seen evidence to this effect: 'The Defendant confessed the last time, and you know, took his lumps, and this time he didn't confess. And so he confesses when he's guilty, and he doesn't confess when he's not guilty, so, my gosh, he would confess if he were really guilty.' And I'd argue there is no way on the face of the earth that that man was going to confess given the present circumstances in which he's in. Look at him. Look at the mind set of the offender. Certainly there is stigma to being considered a sexual offender in our society. There is, was stigma in telling someone that he had abused these two girls, but it's a worse stigma for the homosexual nature of a relationship with a boy. It's a worse stigma, the fact that it's his own son.

"* * * * *

"* * * [T]hat was the first time he had been confronted with allegations of this nature. He didn't know what was going to happen to him. This was his friend, [Detective] Johnson, saying, 'Hey, I've got two little girls saying you abused them. Did you do it?' 'Yes, I did.' It's really hard to lie to a friend, to someone who you know.

"The next context, the next situation where the Defendant is confronted, he's in prison. * * * He knows, too, what confessing got him last time. Confessing didn't get him treatment like he wanted. Confessing got him to prison, and he doesn't like that. He doesn't want to stay there.

"* * * * *

"* * * The abuse spread out to [N's] friends. Dad didn't keep his promise. Dad didn't keep his mitts off other people. Dad touched [N's] own friends, and those friends had the courage to talk out about it.

"* * * [T]he abuse that happened to him has been confirmed, because these other people are strong enough, and brave enough, and courageous enough to come forward."

The trial court granted petitioner's motion for judgment of acquittal on three counts, and petitioner was convicted on the remaining nine. We summarily affirmed the convictions on appeal.

Petitioner filed for post-conviction relief. He alleged multiple grounds of ineffective assistance of counsel at trial and on appeal. The post-conviction court rejected all but three of those allegations. Of sole relevance to this appeal is the court's conclusion that counsel was ineffective in failing to move, *in limine*, to exclude evidence of prior bad acts committed by petitioner.[1]

1.     We review the post-conviction court's findings of fact for evidence of support in the record. *Austin v. McGee*, 140 Or App 263, 265, 915 P2d 1027 (1996). Nevertheless, "as [the findings] give constitutional characterization to the facts, we are bound by the implied historical findings, but we must reexamine the constitutional determinations." *Krummacher v. Gierloff*, 290 Or 867, 869, 627 P2d 458 (1981). The post-conviction court provided the following reasoning for its decision:

"[T]he State argues that petitioner's trial attorney 'made a strategic decision to place at least some of the facts of the prior convictions before the jury.' That may be so. If so, it was a strategic decision that virtually guaranteed petitioner's conviction.

"I find that the petitioner's trial attorney was deficient in bringing out the fact of the prior convictions, and the facts underlying those convictions. I find that, in this sex abuse case, a competent defense attorney would have attempted to limit the admissibility of the prior convictions, if offered by the prosecution, to the fact of conviction, and

---

[1] The court also granted relief on two related allegations that counsel was inadequate in failing to object to the trial court's imposition of an improper term of post-prison supervision. The state does not appeal from those determinations.

that is what a competent trial judge would have admitted, assuming proper objections from a defendant's attorney."

The court concluded that "harm to petitioner's defense [at] trial occurred by reason of the repeated references to the prior convictions and the facts underlying those convictions," and that "[t]he admission of the prejudicial evidence largely eliminated petitioner's chance of winning." Based on its conclusions, the court granted petitioner a new trial.

On appeal, the state contends that counsel's representation of petitioner was not ineffective. The state asserts that there were three options available for counsel's consideration in his strategic effort to minimize the adverse impact of the disclosure of petitioner's prior convictions: (1) to say nothing and let the prosecutor impeach petitioner; (2) to mention only the fact of the convictions in opening in order to draw the sting of the prosecutor bringing them out; or (3) to use the differences between the circumstances of the earlier convictions and the current charges, and the consequences resulting from the earlier charges, to suggest that petitioner was not guilty of the current charges.

The state argues that counsel's use of the third approach was a reasonable tactical decision, because it "allowed petitioner to appear to be forthright with the jury * * * [and] attempt to mitigate the damage by weaving the prior convictions into the defense theory as affirmative evidence why petitioner's denials here of committing the charged crimes should be believed." The state challenges the post-conviction court's conclusion that counsel's performance was inadequate because he elicited the facts and circumstances of the prior convictions. Petitioner responds that the post-conviction court properly relied on the cumulative effect of repeated references to those facts and details throughout the trial.

■ In order to establish a claim of ineffective assistance of counsel, petitioner must show that "trial counsel failed to exercise reasonable professional skill and judgment and that petitioner suffered prejudice as a result." *Stevens v. State of Oregon*, 322 Or 101, 108, 902 P2d 1137 (1995). We first

review the post-conviction court's determination of the reasonableness of counsel's performance for errors of law. *See Krummacher*, 290 Or at 869.

■ The post-conviction court agreed with the state that petitioner's only hope for acquittal was to testify on his own behalf. We also agree with that assessment. This was a case in which there was no physical evidence of any crime and no witnesses to the alleged abuse, which, therefore, presented a credibility battle between two people: N and petitioner. That battle probably would have been fatally one-sided had petitioner not taken the stand. The post-conviction court nonetheless concluded that counsel's decision to disclose to the jury the fact of the prior convictions and the facts underlying those convictions was unreasonable and that, counsel should have moved to limit the evidence admitted to the fact of conviction if the state offered the conviction for impeachment.

As noted, given the necessity of petitioner's taking the stand, admission of the earlier convictions was inevitable. OEC 609(1). Counsel recognized the problem and attempted to blunt the effect of that impending disclosure. By revealing it early on, counsel hoped to use the circumstances surrounding the earlier crimes to emphasize dissimilarities between petitioner's behavior in the two cases and to cast doubt on N's credibility, based on his failure to disclose his own abuse at the time of the earlier allegations. Without question, this was a risky strategy. In fact, counsel's decision to introduce the facts and details of the earlier convictions may well have backfired.

The prosecutor was able to turn counsel's strategy against him at several key stages of the trial. Counsel's strategy also permitted the prosecutor to make forceful jury arguments and to argue that petitioner was much less likely, even if guilty, to admit sexually abusing N, because of his possibly greater sense of shame arising from incest perpetrated against N. The prosecutor was able to remind the jury that petitioner was already in prison, despite his hope for a probationary sentence on his earlier convictions, and to imply that he was motivated to lie in the current case because he inevitably faced another prison sentence on any prospective conviction for similar offenses. Those inferences were

equally, if not more, compelling than the inferences counsel wanted the jury to draw from differences in the circumstances of the earlier charges. Furthermore, as the post-conviction court emphasized, the frequent reiteration of details of the previous convictions throughout the trial made them a prominent subtext in the case.

The post-conviction court was uncertain whether the nature of the underlying convictions was admissible over objection but concluded that, even if the nature of those convictions could be revealed to the jury, counsel should have moved *in limine* to prevent the state from bringing out any more information about them. It is evident that the court believed that the only effective strategy available would have been to restrict any mention of the prior convictions to the fact and, possibly, the nature of the convictions on *cross-examination* of petitioner by the prosecutor.

However, the other tactical choices available to petitioner were also perilous. If petitioner testified, then both the fact *and nature* of petitioner's convictions would be admissible, regardless of their prejudicial effect. *State v. Venegas*, 124 Or App 253, 255-56, 862 P2d 529 (1993), *rev den* 318 Or 351 (1994) (OEC 609(1) does not prevent the state from showing the nature of prior felony convictions that meet the other requirements of that rule). Choosing to leave the revelation of defendant's prior sex abuse convictions unexplained would likely have led the jurors to speculate about the details. Although petitioner would have been entitled to a jury instruction limiting the jury's consideration of the prior convictions to their effect on his credibility,[2] it would be very risky to trust a jury's ability to follow that instruction rigorously under these circumstances. It would have required a herculean effort for the jury to resist the inference that petitioner, a convicted sex offender, was likely guilty of the current charges as well. In fact, the jury might well have presumed that the previous convictions involved circumstances

---

[2] Petitioner would have been entitled to the following uniform jury instruction:

"If you find that the defendant has been previously convicted of a crime, you may consider this conviction only for its bearing, if any, on the believability of the defendant's testimony.

"Specifically, you may not use this evidence for the purpose of drawing the inference that because the defendant was convicted of a previous crime the defendant may be guilty of the crime charged in this case." UCrJI 1017.

similar to the charged offenses or even involved the same victim. And, of course, had counsel left it to the state to reveal the prior convictions to the jury, the prejudicial effect would probably have been magnified. Simply put, counsel faced an impossible choice. When evaluated against the totality of the circumstances, *Carias v. State of Oregon*, 148 Or App 540, 543, 941 P2d 571 (1997), any strategy that counsel might have adopted was fraught with risk.

"Adequacy of assistance of counsel * * * *allows for tactical choices that backfire, because, by their nature, trials often involve risk*. Moreover, a risk which is foolish in a close case may be sound where the prosecution is strong and the defense weak." *Pachl v. Zenon*, 145 Or App 350, 358, 929 P2d 1088 (1996), *rev den* 325 Or 621 (1997) (emphasis in original). Clearly, petitioner would have been better off had the jury never learned of his prior convictions. But the inevitability of their disclosure narrowed counsel's options to a decision about how best to control the damage. Counsel made a reasonable selection among an array of unpromising choices. The other ways in which the evidence could have emerged— either with petitioner on cross-examination or through bare mention by counsel of the fact and nature of the prior convictions, with both alternatives depending on the questionable hope that the jury could resist the temptation to misuse the information in its deliberations—likely would have been equally damaging. Notwithstanding its obvious risks, counsel's strategy may have provided petitioner with his only, albeit slim, chance of acquittal. Therefore, it was not constitutionally inadequate.

Because we conclude that petitioner's counsel was not constitutionally inadequate, we are not required to determine whether admission of petitioner's previous convictions had a tendency to affect the result of the prosecution. *Martinez v. Baldwin*, 157 Or App 280, 283, 972 P2d 367 (1998), *rev den* 329 Or 10 (1999) (to prevail on a post-conviction ineffective assistance of counsel claim, petitioner must show *both* unreasonableness and prejudice).

Reversed.