Argued and submitted October 25, 1999, reversed on appeal; affirmed on cross-appeal April 5, 2000

DANIEL DAVID LICHAU,
*Respondent - Cross-Appellant,*

*v.*

G. H. BALDWIN,
Superintendent,
Eastern Oregon Correctional Institution,
*Appellant - Cross-Respondent.*

(CV960127; CA A97504)

999 P2d 1207

Kaye E. McDonald, Assistant Attorney General, argued the cause for appellant - cross-respondent. With her on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Steven H. Gorham argued the cause and filed the brief for respondent - cross-appellant.

Before Landau, Presiding Judge, and Haselton and Brewer, Judges.

BREWER, J.

**BREWER, J.**

Defendant seeks reversal of a judgment granting post-conviction relief to petitioner based on inadequate assistance of trial counsel. Petitioner "cross-appeals," arguing that the trial court erred on all issues decided adversely to him.[1] We review for errors of law, reverse on appeal, and affirm on cross-appeal.

Petitioner was indicted on six counts for the rape, sodomy, and sexual abuse of his 11-year-old niece in June 1989. The victim testified that the attacks took place on two separate nights at petitioner's parents' house, in a bedroom 12 feet away from the living room where the parents were watching television. According to the victim, her younger sister was sleeping in the same bed with her at the time of both attacks. The victim also testified that on the day after the second attack, she was admitted to the hospital for an unrelated leg infection and that petitioner visited her during the hospital stay. Hospital records established that the victim was first hospitalized for treatment of her leg infection on June 19.

Petitioner pled not guilty to the indictment and filed a notice of intent to rely on alibi evidence; namely, that he was enlisted in the United States Marine Corps and stationed at Camp Lejeune, North Carolina, during the period when the victim alleged the crimes took place. Trial counsel obtained, through discovery from the state, petitioner's battalion movement and military pay records, which showed that he took no recorded leave during June 1989. Counsel also contacted the military attorney appointed to represent petitioner at the time of his arrest to seek assistance in unearthing additional evidence to support the alibi defense. That attorney was sympathetic to petitioner, had specialized

---

[1] Although petitioner makes his argument pursuant to a "Notice of Cross-Appeal," it is actually a cross-assignment of error because petitioner does not seek to alter the judgment. *Bray v. American Property Management Corp.*, 156 Or App 356, 358 n 2, 965 P2d 426 (1998), *on remand* 164 Or App 134, 988 P2d 933 (1999). Nonetheless, we must dispose of the cross-appeal and do so by affirming the trial court's denial of relief on the other grounds asserted by petitioner. *See, e.g., State ex rel Fraley v. Deschutes Cty Bd. of Comm.*, 151 Or App 201, 209, 948 P2d 1249 (1997), *rev den* 327 Or 305 (1998) (disposing of similarly mislabeled cross-appeal by affirmance).

knowledge of military record keeping procedures, and was willing to help. However, the attorney was unable to locate any additional evidence of petitioner's whereabouts at the relevant time.

On the morning trial commenced, petitioner and trial counsel met with the prosecutor and a military investigator, Sergeant Moreno, who was available as a witness for the state. Before trial, Moreno had obtained a copy of the 1989 chronology for petitioner's battalion. The prosecutor told petitioner and counsel that, based on Moreno's investigation, petitioner's unit was awaiting overseas deployment at the time of the alleged crimes and that, prior to deployment, petitioner would have been eligible to return home for leave. The prosecutor stated that she would fly in witnesses from Camp Lejeune who could further refute petitioner's alibi defense. Trial counsel testified that the prosecutor told him that she had records or other evidence showing that petitioner had taken leave during June 1989. Trial counsel believed that if the prosecutor established that petitioner *could* have been away from Camp Lejeune, it would have been the "kiss of death" for the defense, because in his experience juries convict defendants whose alibis are not airtight. He therefore withdrew petitioner's alibi defense. The state never produced records establishing that petitioner took any leave or liberty during June 1989.

Petitioner testified that, after trial commenced, he told counsel that another marine, Sergeant Glenz, had volunteered to search for additional military records concerning petitioner's whereabouts in June 1989. According to petitioner and Glenz, who also called counsel to repeat the same offer of assistance, counsel declined the offer.

The thrust of petitioner's position at trial was that the victim's allegations were implausible in light of the facts that her sister was sleeping in the same bed and that there were several other people in the house at the time of the alleged attacks. The prosecutor presented testimony by two of petitioner's sisters, who stated that he had attacked them, under similar circumstances, when they were children. Petitioner was convicted of one count of rape in the first degree, two counts of sodomy in the first degree, and three counts of

sexual abuse in the first degree. ORS 163.375; ORS 163.405; ORS 163.427. Those convictions were affirmed on appeal. *State v. Lichau*, 133 Or App 602, 891 P2d 25, *rev den* 321 Or 340 (1995).

Petitioner filed a petition for post-conviction relief alleging multiple grounds of trial court error, prosecutorial misconduct, and inadequate assistance of counsel. In support of the ineffective assistance of counsel claim, petitioner alleged that trial counsel failed to conduct an adequate investigation of his alibi defense. Petitioner presented testimony to the effect that there were records and witnesses establishing that he had been in North Carolina at various times during June. According to petitioner, that evidence would have cast doubt on the possibility that he took unrecorded leave in Oregon during that month. Petitioner also produced evidence that trial counsel: (1) waited until one year after trial before requesting further records from the military; (2) declined the offer of assistance to obtain further documents made by Glenz; (3) did not call petitioner's brother and neighbor to testify that petitioner was not at his parents' home at the relevant time; and (4) did not reinstate the withdrawn alibi defense at trial.

The trial court found that "[w]ith the withdrawal of the alibi defense [p]etitioner and his parents were left to testify that they didn't think he was present and that they didn't remember him being present but that they couldn't be sure." The court found and concluded that:

"With the alibi defense and the testimony available to [p]etitioner the jury could have received the following testimony:

"1) Petitioner was not at his parents' home in June of 1989.

"2) Petitioner had no recorded leave from the Marine Corps at the time of the alleged crimes.

"3) There was no basket (unrecorded) leave available to him.

"4) The longest unrecorded period away from base during the time of the alleged crimes was for a 96 hour liberty.

"5) Petitioner could not have traveled further than 350-500 miles during said liberty without the express written permission of his commanding officer. Such an extension required special arrangements and would have been difficult to arrange with the short advance warning given for 96 hour liberties.

"6) According to the unit records [p]etitioner would have been involved in a 'snap in' to qualify for rifle training in North Carolina on June 19, 1989, the day the victim testified he visited her in the hospital in Oregon following the alleged crimes.

"This evidence clearly has a tendency to affect the result of the prosecution of the case."

The court concluded that counsel was ineffective in failing to investigate the alibi defense adequately and in withdrawing and then later failing to seek reinstatement of the defense. The court rejected petitioner's remaining claims. The state appeals, and petitioner makes cross-assignments of error to the post-conviction court's decision on those claims on which it did not grant him relief.

The state asserts that the adequacy of petitioner's legal representation must be evaluated from the standpoint of counsel's perspective at the time the challenged conduct occurred and that, under the totality of circumstances, the attorney made reasonable decisions. The post-conviction court erred, according to the state, by viewing the attorney's actions in light of later-developed evidence. Petitioner counters that the state's quarrel is with the post-conviction court's factual findings that, he asserts, are supported by evidence in the record and that the facts on which the court based its decision would have been apparent to counsel, at the relevant time, had he been better prepared.

We limit our review to "errors of law and whether the facts found by the post-conviction court are supported by the record." *Smart v. Maass,* 148 Or App 431, 434, 939 P2d 1184, *rev den* 326 Or 62 (1997). "Petitioner is entitled to post-conviction relief if [he] proves, by a preponderance of the evidence, that [he] suffered a substantial denial of a state or federal constitutional right in the proceeding below, which renders the conviction void." *Ashley v. Hoyt,* 139 Or

App 385, 391, 912 P2d 393 (1996); ORS 138.620(2);[2] ORS 138.530(1)(a).[3]

■ Before we address the legal issues that the state's assignment of error presents, we must confront petitioner's argument that the state's appeal reduces to a quibble with the trial court's findings of fact. That argument is incorrect. The state does not attack the court's findings of fact; rather, it challenges the court's application of those facts to the governing legal standards. We review that reasoning process for errors of law. *State v. Lynch*, 135 Or App 528, 532, 900 P2d 1042, *rev den* 322 Or 362 (1995) (on appeal, "[w]e are bound by the trial court's findings of historical fact and review to determine whether the trial court applied the correct law to those facts").

■ We first evaluate petitioner's claim under Article I, section 11, of the Oregon Constitution. *State v. Kennedy*, 295 Or 260, 262-68, 666 P2d 1316 (1983). Article I, section 11, provides that "In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel * * *." To make out a claim of ineffective assistance of counsel, petitioner must show that "trial counsel failed to exercise reasonable professional skill and judgment and that [he] suffered prejudice as a result." *Stevens v. State of Oregon*, 322 Or 101, 108, 902 P2d 1137 (1995).

■ The first prong of that inquiry asks "whether counsel failed to raise reasonable issues at trial that were fundamental to [the] defense." *Lovelace v. Zenon*, 159 Or App 158, 161, 976 P2d 575 (1999), *rev den* 329 Or 589 (2000). In making such an inquiry we have long been reluctant to second-guess counsel's tactical choices:

---

[2] ORS 138.620(2) provides:

"If the petition [for post-conviction relief] states a ground for relief, the court shall decide the issues raised and may receive proof by affidavits, depositions, oral testimony or other competent evidence. * * * The burden of proof of facts alleged in the petition shall be upon the petitioner to establish such facts by a preponderance of the evidence."

[3] ORS 138.530(1)(a) provides that post-conviction relief shall be granted if the petitioner establishes "[a] substantial denial in the proceedings resulting in petitioner's conviction, * * * of petitioner's rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void."

"The form of acceptable advocacy varies from case to case. * * * [C]ounsel [may] deem it advisable to * * * offer the one seemingly strongest defense. In any case, the strategy, tactics, and manner of advocacy of the defense are for counsel to determine based upon the exercise of professional skill and judgment." *Krummacher v. Gierloff*, 290 Or 867, 875, 627 P2d 458 (1981).

An error that results from counsel's failure to exercise reasonable professional skill and judgment, however, is not tactical. *Stevens*, 322 Or at 109; *Krummacher*, 290 Or at 875-76.

■■    The determination, then, of whether an attorney's performance was "reasonable" is a difficult one and must be assessed in light of the totality of the circumstances at trial. *Martinez v. Baldwin*, 157 Or App 280, 286, 972 P2d 367 (1998), *rev den* 329 Or 10 (1999). The appropriate standard of review of the first prong of the ineffective assistance of counsel test is for legal error. *Harrington v. Johnson*, 165 Or App 755, 761, 997 P2d 283 (2000).

The post-conviction court concluded that, despite the fact that counsel "fought very hard at all stages of the trial," his investigation, withdrawal, and failure to reinstate the alibi defense nonetheless constituted "a failure to exercise reasonable professional skill and judgment." Because trial counsel decided to abandon the alibi defense based on his belief that the information he gathered during his pretrial investigation could not establish a conclusive alibi, we first examine the reasonableness of that investigation.

■    As noted, the post-conviction court found that petitioner and his parents could not testify with certainty whether or not petitioner was in Oregon at the relevant time. That uncertainty made the viability of an alibi defense questionable from the inception. Nevertheless, trial counsel pursued the matter further, taking several steps to determine petitioner's whereabouts with greater certainty. Trial counsel obtained battalion movement and pay records from the state. He also contacted a military attorney who had represented petitioner at an earlier stage in the proceedings because that attorney had specialized knowledge of military recordkeeping procedures. However, the military attorney

was unable to locate any additional records that would corroborate petitioner's alibi. The post-conviction court did not conclude that counsel should have suspected that the military attorney's search for records had been inadequate, and we find nothing in the record to support such a conclusion. Only *after* trial commenced, and the alibi defense had already been withdrawn, did Glenz propose an additional search for information. We conclude that, under the totality of the circumstances, counsel conducted a reasonable pretrial investigation.

■■ We likewise conclude that counsel's decision to withdraw the alibi, and thereafter not to reinstate it, was reasonable under the circumstances. On the morning trial was to commence, the prosecutor informed counsel of her theory that petitioner was or could have been on leave and threatened to bring in additional military witnesses to testify to that effect. The prosecutor never provided counsel with any documentation establishing that petitioner was on recorded leave. She did, however, produce Moreno, who was prepared to testify or obtain further evidence that unrecorded leave or liberty was available to petitioner because his unit was soon to depart for an overseas assignment. Based on what counsel then knew, petitioner had no recorded leave in June 1989. Counsel could not, on the other hand, prove that petitioner did not take unrecorded leave or liberty that would have allowed him to visit his family in Oregon. In his experience as a criminal defense attorney, counsel knew that if the state cast doubt upon petitioner's alibi, he likely would be disbelieved in all other aspects of his defense. As counsel put it:

> "In my experience with juries, it's not only [that] credibility is shot but that the jury resolves the case into just a was he or wasn't he there issue. * * * They forget all about the 'did he do it.' They assume he did it if he was there."

Petitioner argued at the post-conviction trial, and the court apparently agreed, that counsel should have accepted Glenz's offer to search for records that would exonerate petitioner. Viewing the investigation in light of the totality of the circumstances, *Martinez*, 157 Or App at 286, we conclude that counsel acted reasonably in declining the offer. By that time, after the commencement of trial, counsel

had conducted his own investigation, which had not produced any compelling alibi evidence. Furthermore, Glenz did not come with documents in hand and made no showing that additional relevant records even existed. Counsel reasonably could have concluded that a further search would be fruitless—particularly in light of the military attorney's failure to locate convincing documentation—or inconclusive, given the state's position that petitioner could have taken unrecorded leave or liberty. After conducting a reasonable investigation into petitioner's alibi, counsel weighed the risk that the defense would not be strong enough to convince the jury. We will not second-guess his decision to pursue a defense that appeared to have better prospects for success. *See id.* at 289.

Moreover, even if counsel had obtained the evidence on which petitioner now relies, the tactical concerns underlying his decision to withdraw the alibi would not have been eliminated. That evidence consisted of testimony from petitioner's brother and a friendly neighbor of his parents that petitioner was not at his parents' home during June 1989, unit records obtained by Glenz, testimony from another military witness, and material compiled by a military investigator during the course of the post-conviction proceeding. Nothing contained in that material or testimony discloses the existence of any witness who could conclusively establish petitioner's whereabouts in June 1989. The testimony of friendly witnesses such as petitioner's brother and neighbor,[4] although certainly admissible, would have been far from conclusive. Furthermore, the testimony of the military witnesses and the later-discovered military records only established that it is unlikely that petitioner had unrecorded leave during June in excess of a 96-hour liberty—that evidence did not create an airtight alibi. In fact, some of the records actually supported the state's theory. For example, petitioner's battery officer, when interviewed, stated that he could "almost guarantee" that 96-hour liberty periods were granted before deployment from Camp Lejeune. In addition, petitioner's battalion executive officer stated that, although he had no specific knowledge that it had occurred in petitioner's case, it

---

[4] The neighbor lived approximately one mile away from petitioner's parents' home.

was not uncommon for Marines to get others to cover for them if they were absent.

The trial court, as noted, found that a more thorough investigation before the criminal trial would have shown that petitioner "could not have traveled further than 350-500 miles during said liberty without the express written permission of his commanding officer." However, assuming the truth of that fact, there is no evidence that petitioner could not, while on an unrecorded four-day liberty, have taken a commercial flight home from the most convenient airport in North Carolina in violation of that restriction. Although such conduct apparently would have violated military rules, the assumption that petitioner would not have broken those rules does not necessarily make for a convincing alibi in the absence of more persuasive evidence of his whereabouts.

The trial court also relied on evidence from the unit records obtained during the post-conviction proceedings that showed that petitioner "would have been involved in a 'snap in'[5] to qualify for rifle training in North Carolina on June 19, 1989, the day the victim testified he visited her in the hospital in Oregon following the alleged crimes." That evidence was controverted. The only record that has been produced on the subject of petitioner's rifle training is the unit diary, which contains a notation showing that petitioner was on the Camp Lejeune rifle range on June 28, 1989. Glenz testified that the record notation probably meant that petitioner's range testing commenced on June 26. The evidence at the post-conviction trial showed that, before range testing, Marines go through "snap in," which requires five days to complete. Assuming that, in order for the victim's testimony to be credible, petitioner must have visited her in the hospital no earlier than June 19—and further assuming that petitioner began range testing on June 26—under the state's evidence, he still could have met his "snap in" requirements by returning to North Carolina on or before June 21. Therefore, while relevant, the court's finding does not take into account evidence from the state that contradicted petitioner's argument that he could not have been in Oregon on June 19.

---

[5] During "snap in," Marines practice, for extended periods of time, the positions in which they must stand or kneel to fire their weapons.

■ On balance, the more thorough results of the post-conviction investigation yield the portrait of a somewhat more viable, but still not "airtight," alibi defense. Although there clearly is evidence in the record to support the trial court's finding that further information regarding petitioner's whereabouts in June 1989 was available, that information was not conclusive. Because there is no reason to conclude that a more thorough investigation would have dictated that counsel pursue the alibi defense, even if counsel's investigation was inadequate, petitioner has not established that he was prejudiced as a consequence. *Trujillo v. Maass*, 312 Or 431, 437, 822 P2d 703 (1991).

■ Petitioner argues that, had counsel asserted the alibi defense, he would not have needed to challenge the victim's credibility and the "devastating" testimony from his sisters would never have been admitted. By their nature, tactical choices in a trial involve risk. That such choices may result in an unfavorable outcome does not compel us to conclude that counsel's assistance was ineffective. *Krummacher*, 290 Or at 875. Trial counsel did not pursue in a vacuum a defense that posed the risk that the trial court would admit petitioner's sisters' testimony. Rather, he did so believing that the controverted alibi defense would likely fail.

Counsel argued strenuously that petitioner's sisters' testimony was inadmissible under OEC 404(3),[6] which prevents evidence of prior acts "to prove the character of a person in order to show that the person acted in conformity therewith." He also argued that the testimony should not be admitted because "any relevance is vastly outweighed by its tendency to prejudice the defendant[.]" OEC 403. Counsel reasonably believed, in the exercise of his professional skill and judgment, that the controversy over petitioner's alibi meant that defendant's only realistic chance for acquittal was a defense based on the physical proximity of family members to the alleged scene of the crime.

■ ■ We likewise conclude that counsel's assistance was not ineffective under the Sixth Amendment to the United

---

[6] In *Lichau*, 133 Or App at 602, which we affirmed without opinion, the admissibility of the testimony was an issue on petitioner's direct appeal of his conviction.

States Constitution. Under the federal guarantee, petitioner must show that "counsel made errors so serious that counsel was not functioning as * * * counsel," and that such ineffective assistance "prejudiced the defense." *Strickland v. Washington*, 466 US 668, 687, 104 S Ct 2052, 80 L Ed 2d 674 (1984). As under the Oregon Constitution, the federal analysis involves an objective, case-by-case inquiry that is "highly deferential" to counsel's decisions. *Id.* at 687-90. For the same reasons we conclude that counsel's assistance did not breach Article I, section 11, of the Oregon Constitution, we conclude that counsel's assistance did not fall below the federal standard. Under the circumstances, his decisions not to investigate further or proceed with an alibi defense were reasonable. *See id.* at 690-91. The trial court therefore erred in deciding that petitioner had inadequate assistance of counsel.

■ Petitioner cross-assigns error to the post-conviction court's rulings against him on all of the other claims he raised, including multiple allegations of trial court error, prosecutorial misconduct, and other issues. He does not brief the cross-assignment of error but, instead, invites us to comb his post-conviction trial memorandum for support. The rules of this court require appellants to set out "clearly and concisely" each assignment of error "under a separate and appropriate heading, [which] must be specific and must set out verbatim the pertinent portions of the record[.]" ORAP 5.45(4). They further require appellants to "identify the applicable standard of review, followed by citation to the statute, case law or other legal authority for that standard of review." ORAP 5.45(6). Because petitioner's cross-assignment of error fails to present and develop appropriate appellate arguments, we decline to review it.

Reversed on appeal; affirmed on cross-appeal.