17

Submitted on trial court's finding of fact on remand (177 Or App 32, 33 P3d 373 (2001)), affirmed November 26, 2003

In the Matter of
Curtis Jones, a Minor Child.

STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Respondent,*

*v.*

Curtis JONES,
*Appellant.*

9611-83279; A106772

80 P3d 147

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, for respondent.

Before Edmonds, Presiding Judge, and Armstrong and Wollheim,* Judges.

EDMONDS, P. J.

---

* Wollheim, J., *vice* Kistler, J., resigned.

**EDMONDS, P. J.**

This matter comes to us as part of an appeal by youth from an adjudication by the Multnomah County juvenile court that he committed acts that, if he were an adult, would constitute the crime of sexual abuse in the third degree. ORS 163.415; ORS 419C.005(1). On appeal, youth argued that the evidence was insufficient to find beyond a reasonable doubt that he sexually abused the victim. He also argued that he received inadequate assistance of his trial counsel in the adjudication hearing. In *State ex rel Juv. Dept. v. Jones*, 177 Or App 32, 33 P3d 373 (2001), we rejected his argument that the evidence was insufficient to find beyond a reasonable doubt that he sexually abused the victim. However, pursuant to the Supreme Court's holding in *State ex rel Juv. Dept. v. Geist*, 310 Or 176, 192 n 16, 796 P2d 1193 (1990), we remanded the issue of whether youth received inadequate assistance of his trial counsel in his adjudication hearing to the juvenile court to make findings regarding the adequacy of youth's counsel's representation. The juvenile court has now made findings that have been filed with this court. Youth reiterates that he did not receive adequate representation by trial counsel at the adjudication hearing, as demonstrated by the record made in the juvenile court after remand. We disagree and affirm the adjudication, incorporating by reference our prior opinion and concluding for the reasons expressed below that he received adequate representation of counsel.

We review the facts in juvenile cases *de novo* on the record. ORS 419A.200(6)(b). On remand, both youth and the juvenile department called witnesses to testify. Some of the testimony given by youth, youth's mother, and youth's trial counsel was conflicting. The juvenile court resolved those conflicts by finding that youth's trial counsel's testimony was more credible. After conducting a *de novo* review of the record, we agree with that finding and with the other findings made by the trial court. We note that the trial court had the opportunity to view the witnesses firsthand and that trial counsel's testimony that is in conflict with the testimony of youth and his mother is more consistent with the events that are undisputed in the testimony. Therefore, in the statement

of facts that follows, we recite the facts as the trial court found them.

Youth was charged with and adjudicated for conduct occurring on December 14, 1998, that would have constituted sex abuse in the third degree had he been an adult. At the adjudication hearing, the victim testified that "[youth] jumped over the [front] seat of the car and tried to come on to [her]." She described youth as "trying to go up [her] shirt," and said that, as he did so, he "had a hold of my arm, and he was trying to touch my breast." She further testified that youth touched her breast two to three times on the outside of her clothing during the encounter. The victim's sister testified to seeing bruising on the victim's arm that corresponded to the victim's report of what happened. Youth's position at hearing and on appeal is that he remained in the front seat and leaned over it to try to kiss the victim. He testified that the victim moved her head as he was attempting to kiss her, and he attempted to hold her chin up with his finger. According to youth, any contact between his head and her breast was incidental to his unsuccessful attempt to kiss the victim. The only individuals in the car at the time of the encounter were youth and the victim. The driver of the car testified that when he returned to the car he saw youth leaning over the front seat of the car, moving his hands. When the driver opened the car door, he asked youth what was going on, and youth replied, "Well, I was getting some, you know."

The specific allegations made by youth regarding the inadequacy of his trial counsel are: (1) Trial counsel failed adequately to advise youth and his mother of the trial date; (2) trial counsel failed adequately to confer with youth and his mother before the trial date and to consult with youth about other potential witnesses in his defense until the day of trial; (3) trial counsel failed to subpoena and interview witnesses[1] who could have offered testimony that would have impeached the victim's version of what occurred; and (4) trial

---

[1] The trial court found, and we agree, that none of the witnesses that youth wanted counsel to subpoena, other than Wilson, would have offered relevant evidence.

counsel, after being informed that youth wanted a continuance of the adjudicatory hearing, failed to advocate adequately for a continuance by not informing the court of what the witnesses could testify about.

With regard to those allegations, the trial court made the following findings, with which we agree. There is no evidence that youth received notice of the trial date of June 10, 1999, until his counsel telephoned his home on June 9, 1999. Previously, trial counsel had conferred with and discussed the charge with him on April 29, 1999. She read the police report of the investigation of the encounter to youth; the report contained a recital of the victim's claims. She asked youth what had happened. Youth denied any conduct other than trying to kiss the victim. He said he stopped when the victim resisted. Youth did not tell his attorney at that time about any potential defense witnesses who could testify to inconsistent statements made by the victim, although he knew within two to four weeks after the incident occurred that Wilson was a potential witness. Trial counsel also told youth about a potential plea offer and indicated that she would try to negotiate a plea to a charge that would not require youth to register as a sex offender. The juvenile department subsequently withdrew its plea offer. On April 30, 1999, trial counsel asked an investigator to interview the victim, the victim's mother, and the victim's brother. On May 10, 1999, trial counsel asked the investigator to interview the victim's sister. The investigator completed those assignments, and trial counsel reviewed the investigator's reports.

Youth and his mother did not provide trial counsel with information about any other witnesses until the day of trial. When trial counsel telephoned youth's residence after 5:00 p.m. on June 9, 1999, to inform the youth of the June 10, 1999, hearing, counsel spoke to youth's mother. She did not recall speaking with youth. Counsel made an appointment to meet with youth and his mother an hour before the start of the hearing. However, youth and his mother did not arrive until about 15 minutes before the time the hearing was due to begin. At that time, youth, for the first time, provided trial counsel with the names of several witnesses whom he wanted subpoenaed. Those witnesses included Wilson, who had

talked with the victim in the hallway of their school the day after the incident occurred.[2] As a result, trial counsel moved for a continuance of the hearing, telling the trial court:

> "And I also have one other matter. [Youth] and his mother came today. They—my office failed to advise them of the Call date, due to a change in staff, a letter wasn't sent. They weren't even aware of this trial until yesterday, although I had met with [youth] some time ago to go over the report and develop some investigation. They have given me additional names of people they want interviewed prior to proceeding today. And so they are not comfortable proceeding today. They were under the impression that the case had actually been dismissed. Although I didn't tell them that, I don't know if Mr. Van Wechel[3] told them that or—so, aside from that issue, I am prepared to go, but they're not comfortable proceeding. They report that they have information that would go to the victim's credibility, which is at issue."

The juvenile department's counsel objected. He pointed to previous continuances for which the state had not been responsible and told the court that the state had five witnesses who were present to testify. He suggested that an offer of proof might be in order. The court appeared to agree with that idea. Trial counsel responded, "I don't even know that I could do that, because I don't really know what they would—I have a vague idea of what they might say, but—."[4] The juvenile department's counsel interjected, "[m]y point was only maybe to give an opportunity for the Court to hear what the youth thinks the additional witness—." The court interrupted, "I don't think that would be appropriate." Counsel for the juvenile department agreed, and the court ruled,

---

[2] Trial counsel was asked if youth told her about any potential witnesses, including Wilson, at the April 29 meeting. She answered, "[n]ot that my notes indicate, not that I remember. No."

[3] Trial counsel testified that Van Wechel is a representative of the juvenile department.

[4] When trial counsel was asked if youth or his mother indicated the nature of the testimony of the witnesses, she replied, "Well, my notes—this was all written pretty quickly because we were getting ready to go into the courtroom, but essentially they would testify that the victim is a known liar, that the victim and defendant—that the victim said he had tried to rape her and that [Wilson] was telling the cousin, or maybe the victim was telling the cousin that the victim is a liar. Somebody was telling the cousin that the victim was a liar, and I have that written under what [Wilson] would say."

"I'll proceed today with trial. So I'll deny the child's request to set the case over" without trial counsel having the opportunity to make further comment.

At the hearing on remand, Wilson, one of the witnesses whom youth wanted subpoenaed, testified that she said to the victim, approximately the day after the incident occurred, "People are saying that you're saying [youth] tried to rape you, and I don't believe that and I want to know what happened." According to the witness, the victim replied, "No, I don't know why people are saying that; [youth] just tried to kiss me, and everything is fine; don't worry about it." The witness also testified that youth had never asked her to be a witness at the adjudication hearing, even though she had reported the conversation to him before the hearing.

■       To prevail on an inadequate assistance counsel claim under Article I, section 11, of the Oregon Constitution in a criminal proceeding, an adult must demonstrate that his or her counsel failed to exercise the professional skill and judgment that a reasonable attorney would have exercised under the same circumstances and that he or she has suffered prejudice as a result of counsel's failure. *See, e.g., Aquino v. Baldwin*, 163 Or App 452, 458, 991 P2d 41 (1999). A similar standard applies to claims based on the Sixth Amendment to the United States Constitution. We adopt those same standards for purposes of this case, where youth alleges that he received constitutionally inadequate assistance of trial counsel. Finally, the burden of proof to establish trial counsel's inadequacy is on youth. He must establish not only that trial counsel was inadequate but also that the inadequacy prejudiced his case to the extent that he was denied a fair hearing. *Geist*, 310 Or at 191.

■       We are not persuaded that youth has carried his burden of proving that he did not receive adequate assistance of trial counsel at his adjudication hearing in light of the above standard. Although it is correct that trial counsel should have given youth more notice of the trial date, we cannot conclude that the lack of notice affected his ability to defend. Youth had considerable opportunity before trial to inform trial counsel of other witnesses who might know of evidence pertinent to the victim's credibility and failed to do so. Wilson

is youth's cousin. She testified that she had contact with youth "about every other day." She also said that she told youth and his mother about the conversation with the victim around the time she had the conversation with the victim. This is not a case where, because of an untimely notice of the date of trial, counsel was unable to subpoena a material witness who would have otherwise been available. Rather, it is a case where youth did not tell counsel about the witness in a manner that permitted counsel to interview the witness and determine what evidence was available from the witness. Youth's burden is to prove that counsel's failure to notify him of the trial date earlier caused an inability to subpoena Wilson.[5] Instead, it appears that youth's failure to tell counsel in April about Wilson is the principal cause of his inability to call her as a witness.

It also appears from the record that trial counsel undertook to investigate the names of all potential witnesses that appeared in the police reports and did everything else required of reasonable counsel during that time. Had youth told trial counsel about Wilson's contact with the victim, counsel could have asked the victim when she testified at the adjudication hearing whether she had made such a statement to Wilson. In the absence of that information, counsel could not have established the foundation for Wilson's testimony. We conclude, therefore, on the record before us that her representation was constitutionally adequate for that period of time.

■ The question then becomes whether counsel acted unreasonably after she was informed by youth 15 minutes before the beginning of the hearing that he wanted a continuance to subpoena witnesses whom he had not told her about until then. It appears that trial counsel did everything that she could have done as youth's attorney and as an officer of the court when she learned of the names of the potential witnesses. She asked for a continuance of the hearing, explaining what had just occurred, thereby preserving that issue for

---

[5] Wilson was asked whether youth or his mother ever approached her to ask if she could be a witness at the adjudication hearing. Wilson answered, "I don't remember." When asked if youth ever told her, "I'm going to need you to testify for me[,]" Wilson replied, "I don't remember that."

purposes of appeal. She told the court with admirable candor that otherwise she was prepared to proceed. Youth faults counsel for not making an offer of proof "regarding the names and the substance of the witnesses' testimony." However, counsel told the court that youth and youth's mother "report they have information that could go to the victim's credibility." Moreover, counsel had not had the opportunity to interview the witnesses. Apparently, youth and his mother only told counsel that "the victim was a known liar." Counsel was therefore not in a position to represent what their testimony would be if the witnesses revealed by youth and mother were called to testify. For the above reasons, we conclude that youth has failed to carry his burden of proving that trial counsel's representation of youth was constitutionally inadequate.

Affirmed.