Submitted October 13, 2015, affirmed November 30, 2016

In the Matter of J. J.-M.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

J. J.-M.,
*Appellant.*

Hood River County Circuit Court
J1102501;
Petition Number J1102502;
A155910

387 P3d 426

Caitlin Mitchell filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Judy C. Lucas, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

## SERCOMBE, P. J.

Following a contested adjudication hearing, youth was found to be within the jurisdiction of the juvenile court under ORS 419C.005 for committing acts that, if committed by an adult, would constitute unlawful possession of marijuana, ORS 475.864, unlawful delivery of marijuana, ORS 475.860(1), and four counts of identity theft, ORS 165.800(1). Pursuant to ORS 419C.615, youth petitioned the juvenile court to set aside the judgment finding him within its jurisdiction.[1] Youth contended that he was denied his constitutional right to adequate assistance of counsel in the underlying juvenile delinquency proceeding. More specifically, youth claimed, *inter alia,* that his attorney failed to (1) conduct an adequate and effective investigation into the facts and circumstances of his case, (2) conduct a polygraph of youth, (3) hire a handwriting expert, (4) interview and call witnesses, and (5) request the disclosure of exculpatory evidence from the deputy district attorney.[2]

---

[1] ORS 419C.615 provides, in part:

"(1) * * * [A] person may petition the court on the following grounds to set aside an order finding the person to be within the jurisdiction of the court under ORS 419C.005:

"(a) A substantial denial in the proceedings resulting in the person's adjudication * * * of the person's rights under the United States Constitution or the Oregon Constitution, or both, and the denial rendered the adjudication void; or

"(b) Unconstitutionality of the statute making criminal, if the person were an adult, the acts for which the person was adjudicated.

"(2) When a person petitions the court on one of the grounds listed in subsection (1) of this section:

"* * * * *

"(c) The court shall set aside the order finding the petitioner to be within the jurisdiction of the court if the petitioner establishes one of the grounds set forth in subsection (1) of this section."

[2] Youth also alleged that the state failed to disclose exculpatory evidence in violation of his due process rights under *Brady v. Maryland*, 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963), and that he was actually innocent of the conduct that the state alleged he committed. Youth contends on appeal that the juvenile court erred in denying his petition to set aside on those bases. We reject youth's actual innocence and *Brady* arguments without further discussion, and write to address only youth's inadequate assistance of counsel claim. We also reject without discussion youth's argument that he was denied adequate assistance of counsel because his attorney failed to request the disclosure of exculpatory evidence from the prosecutor.

Youth appeals the juvenile court's judgment denying the petition to set aside. For the reasons explained below, we conclude that the juvenile court did not err. Accordingly, we affirm.

Youth does not request that we review this matter *de novo*, and we decline to do so. ORAP 5.40(8)(c). Thus, we "review the juvenile court's legal conclusions for errors of law, and we are bound by the court's findings of fact so long as there is evidence in the record to support them." *State v. J. N. S.*, 258 Or App 310, 312, 308 P3d 1112 (2013). When the court does not make findings on disputed issues of fact, but "there is evidence to support more than one factual conclusion, we presume that the court decided the facts in a manner consistent with the court's ultimate conclusion." *Id.* We state the facts consistently with those standards.

The underlying juvenile charges arose under the following circumstances. Youth and his sister were in foster care, having been removed by the Oregon Department of Human Services (DHS) from the care of their grandfather, and were in the process of being placed in the care of Kellie and Scott Hughes. The siblings spent a majority of their time at the Hugheses' home in the fall of 2011. They also stayed with Katie Elmer, a DHS foster parent, who was providing temporary care until the certification process for the Hugheses was complete. Elmer's 16-year-old son, A, also lived in Elmer's home. In November 2011, the Hughes family discontinued the foster care placement process, and youth and his sister moved into the Elmer home. Boxes of youth's belongings were moved from the Hughes household to Elmer's home.

Youth did not want to be in the Elmer home, and did not unpack his belongings. While youth was at school one day, Elmer began to unpack youth's belongings and discovered a black water bottle containing some marijuana and money. She called the sheriff's office and Kellie Hughes. Detective Tiffany and Hughes came to Elmer's house and an additional search was conducted. Hughes found marijuana and clear capsules in a blue water bottle that was located on a shelf used to store youth's sister's belongings. Elmer's recently deceased father's wallet was found in one of youth's

boxes; the wallet contained her father's driver's license and social security card.

Youth and his sister did not return to the Elmer home, and a DHS worker collected their belongings from the house. When looking through youth's backpack and other belongings, the DHS worker discovered an auto insurance document in Elmer's and her husband's names inside one of youth's textbooks and the birth certificate of Elmer's deceased father among youth's school paperwork. There was handwriting on the back of the birth certificate, including the telephone number for The Dalles Senior Family Services.

The day after Elmer discovered marijuana in the water bottle, she found marijuana hidden inside a fake Dr. Pepper can that youth had purchased.[3] She also found marijuana inside youth's pillow. Law enforcement brought a drug-detection dog to the house to conduct a search, but no additional marijuana was found at that time. In total, the amount of marijuana found in the house was 66 grams.

In December 2011, youth was charged by juvenile petition with committing acts that, if committed by an adult, would constitute four counts of identity theft, one count of unlawful possession of marijuana, and one count of unlawful delivery of marijuana. Youth's sister was charged with acts that, if committed by an adult, would constitute unlawful possession and delivery of marijuana. The adjudication hearing for both siblings took place together on January 24, 2012, and they each testified in their own defense. Youth admitted that he owned the black water bottle and his sister admitted that she owned the blue water bottle. Both of them denied any use of marijuana and denied storing marijuana inside their water bottles. Youth also denied storing marijuana in the Dr. Pepper can or putting marijuana in the pillow; he denied taking the wallet and papers belonging to others.

The court found youth within its jurisdiction on all six counts, but found that the case against his sister was

---

[3] Elmer was present when youth purchased the can. She described it as a "safe" that looks like a Dr. Pepper can, with a top that can be unscrewed.

not proved. The court attributed all of the marijuana to youth and found that the capsules that had been in the blue water bottle supported a finding that youth possessed the marijuana with an intent to deliver it. Youth did not appeal the judgment finding him within the jurisdiction of the court.

Represented by a different attorney, youth later filed a petition to set aside the jurisdictional judgment pursuant to ORS 419C.615. The court held a hearing on youth's motion to set aside the judgment on August 8, 2013, which was continued on October 3, 2013. After the hearing, youth requested leave to file an amended petition, which the court granted. As noted, youth asserted that he was denied adequate and effective assistance of trial counsel because his attorney had failed to conduct an adequate and effective investigation into the facts and circumstances of his case. Specifically, youth asserted that the attorney was inadequate because the attorney failed to conduct a polygraph of youth, hire a handwriting expert to identify the writing on the birth certificate, interview and call witnesses, and request the disclosure of exculpatory evidence from the deputy district attorney. On November 6, 2013, the court issued a detailed memorandum opinion denying youth's amended petition to set aside the judgment finding youth within the jurisdiction of the court, and on December 6, 2013, the court entered a judgment denying the amended petition.

On appeal, youth contends that the court erred in determining that he had not been denied adequate assistance of counsel by certain actions and inactions of trial counsel and that the deficient performance found by the court to have occurred was not prejudicial to youth. In evaluating youth's contentions on appeal under ORS 419C.615, we apply the constitutional standards for inadequate and ineffective assistance of counsel that have been developed at the state and federal level in the context of post-conviction and habeas corpus relief. *See State ex rel Juv. Dept. v. Jones*, 191 Or App 17, 23, 80 P3d 147 (2003) (adopting adult criminal post-conviction relief standards for juvenile claims of constitutionally inadequate assistance of counsel in a case decided under pre-ORS 419C.615 law).

As relevant here, both Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution guarantee a criminal defendant the right to adequate assistance of counsel. *Montez v. Czerniak*, 355 Or 1, 6, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014); *see also Strickland v. Washington*, 466 US 668, 686, 104 S Ct 2052, 80 L Ed 2d 674 (1984) (United States Constitution requires the "effective" assistance of counsel). In *Montez*, the Supreme Court explained that "the standards for determining the adequacy of legal counsel under the state constitution are functionally equivalent to those for determining the effectiveness of counsel under the federal constitution." 355 Or at 6-7.

To prevail on his claims regarding the adequacy of counsel under the Oregon Constitution, youth must prove both that counsel "failed to exercise reasonable professional skill and judgment and that [he] suffered prejudice as a result." *Hale v. Belleque*, 255 Or App 653, 659, 298 P3d 596, *adh'd to on recons*, 258 Or App 587, 312 P3d 533, *rev den*, 354 Or 597 (2013) (citing *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991)). We evaluate the reasonableness of trial counsel's performance "from counsel's perspective at the time of the alleged error and in light of all the circumstances; the post-conviction court's standard of review is a highly deferential one." *Id.*

"Prejudice of state constitutional magnitude is established by showing that counsel's advice, acts, or omissions had a tendency to affect the result of the prosecution. \* \* \* The existence of prejudice is a question of law that may be dependent on predicate facts." *Id.* at 660 (internal quotation marks and citations omitted). We have recently explained that the prejudice standard is "whether there was some likelihood—'more than mere possibility, but less than probability'—of a different outcome of the trial in the absence of the errors that counsel made." *Baranovich v. Brockamp*, 279 Or App 52, 59, 379 P3d 702 (2016) (quoting *Green v. Franke*, 357 Or 301, 322, 350 P3d 188 (2015)).

Youth asserts that the juvenile court erred in denying his amended petition to set aside the judgment finding him within the jurisdiction of the court, making a general

argument that his counsel was deficient because he failed to adequately investigate youth's case. Youth contends that, had trial counsel investigated, he could have provided an alternative explanation for the incriminating evidence found in youth's belongings—that the marijuana belonged to youth's foster brother and was placed there by the foster brother, and that someone other than youth had written notes on the birth certificate and placed it, and the other documents, among youth's belongings.

Youth asserts that it is well-established that attorneys have a duty to investigate, citing *Stevens v. State of Oregon*, 322 Or 101, 108, 902 P2d 1137 (1995) ("[T]he exercise of reasonable professional skill and judgment generally requires an investigation that is legally and factually appropriate to the nature and complexity of the case."), and *Krummacher v. Gierloff*, 290 Or 867, 874, 627 P2d 458 (1981) (the lawyer is required to "do those things reasonably necessary to diligently and conscientiously advance the defense"). The state responds that, in order to demonstrate inadequate assistance of counsel, youth must prove that the investigation would have produced admissible evidence. We turn to the specific investigative failures alleged by youth.

Youth contends on appeal that the juvenile court erred in concluding that his attorney exercised reasonable professional skill and judgment in not conducting a polygraph of youth as part of his pretrial investigation and representation during the plea negotiation stage of this case. Youth argues that polygraph examinations are common in criminal proceedings and that the results can be used to influence the prosecution in determining whether charges should be dismissed once they have been made. At the hearing on his motion to set aside, youth placed in evidence the results of a post-adjudication polygraph examination that indicated his truthfulness in denying that the marijuana belonged to him and in denying that he took the wallet and birth certificate. Youth claims that his attorney's failure to obtain a polygraph caused prejudice because a passed polygraph was reasonably likely to have influenced the outcome. In his view, had he taken and passed a polygraph, his attorney would have submitted the results to the prosecutor. The state counters that, as the juvenile court concluded, youth

failed to prove that trial counsel failed to exercise reasonable professional skill and judgment in not obtaining a polygraph examination, and that, even if the failure to obtain a polygraph was inadequate assistance of counsel, youth failed to demonstrate that he was prejudiced.

The juvenile court acknowledged that "criminal defendants require effective counsel during plea negotiations." *Missouri v. Frye*, 566 US 133, 132 S Ct 1399, 1407-08, 182 L Ed 2d 379 (2012). However, it concluded that youth failed to prove deficient performance or prejudice, stating that,

> "[i]n the present case, trial counsel had no indication that a passed polygraph would lead the prosecutor to dismiss the juvenile petition or offer a formal accountability agreement. There is no evidence to support a finding that there was a reasonable probability the prosecutor would have taken either of these steps had she received a passed polygraph. There is no evidence to support a finding that there was a reasonable probability that [youth] would have agreed to enter into a formal accountability agreement had one been offered. In short, [youth] failed to prove trial counsel failed to exercise reasonable professional skill and judgment in failing to obtain a private polygraph examination. Further, even if failing to obtain a private polygraph examination constituted ineffective assistance of counsel, [youth] has failed to demonstrate he was thereby prejudiced."

The juvenile court's findings are supported by evidence in the record. At the hearing, youth's trial counsel testified that he did not know why he did not have youth take a polygraph. He also testified that sometimes a polygraph can be helpful in negotiations. He said that, if youth had taken and passed a polygraph, he "would certainly talk to the prosecutor." Notably, there was no testimony from the prosecutor that she would have agreed to dismiss the charges or negotiate a plea deal. Nor was there any testimony from youth indicating that he would have agreed to a plea. Thus, the court's findings support a conclusion that there was not more than a mere possibility that the outcome would have been different. We agree with the court's conclusion that youth did not demonstrate that he suffered prejudice due to

the lack of a polygraph examination. Accordingly, the juvenile court did not err in denying youth's petition based on the polygraph claim.

Youth next contends that the juvenile court erred in concluding that his attorney exercised reasonable professional skill and judgment in not obtaining a handwriting analysis of the handwriting on the back of the birth certificate found among youth's belongings. According to youth, post-adjudication analysis revealed that youth had not written the notes. Youth argues that such evidence at the adjudication hearing would have called into question youth's intent to utilize the documents to commit fraud, and would have supported the defense theory that someone other than youth had written the notes on the birth certificate and placed it, and other documents, among youth's belongings. Youth asserts that this evidence, combined with other evidence that trial counsel failed to obtain, would have been sufficient to create a reasonable doubt as to youth's guilt, thus having a tendency to affect the result of the prosecution. The state responds that the juvenile court was correct in concluding that the decision by trial counsel to not obtain a handwriting analysis was a reasonable professional decision. The state also argues that, even if counsel's performance was deficient, youth failed to prove prejudice.

The juvenile court, in concluding that trial counsel's decision to not obtain a handwriting analysis was a reasonable exercise of professional skill and judgment, considered the totality of the circumstances. *See Hale*, 255 Or App at 659 (evaluation of reasonableness of counsel's performance in light of all the circumstances). It found that the prosecution had no evidence that the handwriting on the back of the birth certificate was youth's handwriting, and that the prosecution's theory of the case appeared to be that youth, in taking the birth certificate and other documents, was acting at the behest of or for the benefit of his grandfather. Therefore, according to the court, retaining a handwriting expert to show that the handwriting was affirmatively not youth's would neither rebut the prosecution's evidence nor the prosecution's theory of the case. Those findings are supported by the evidence in the record.

The juvenile court rejected youth's argument that a handwriting expert would have bolstered youth's claim that he did not knowingly possess another's identification, finding it to be an unpersuasive argument. The court stated that,

> "[i]f [youth] did not write on the back of the birth certificate, then somebody else did. The possibilities are as follows: (1) It was somebody working with [youth] (prosecution theory); (2) It was [the person whose birth certificate it was] (case neutral); (3) It was someone seeking to frame [youth]. Only the third possibility bolsters Youth's claim that he did not knowingly possess the birth certificate."

However, the court found that the third possibility seemed "highly implausible" when considering various factors, including: who had a motive to frame youth; why the framer would write on the back of the birth certificate but not the other documents; and why the framer would expect an authority figure to discover the birth certificate placed inside youth's textbook before youth discovered it.

It is youth's burden to prove that trial counsel's actions fell below an objective standard of reasonableness. *Hale*, 255 Or App at 659. That is, that no reasonable defense attorney would have not hired a handwriting expert. We agree with the juvenile court's conclusion that the decision by trial counsel to not obtain a handwriting analysis was a reasonable professional decision and did not constitute inadequate assistance of counsel. Thus, the juvenile court did not err in denying youth's petition based on the claim of failure to obtain a handwriting analysis.

Youth also contends that the juvenile court erred in concluding that his attorney's failure to investigate by speaking to potential witnesses did not deprive him of constitutionally adequate assistance of counsel. Youth's amended petition to set aside the judgment alleged that

> "[t]rial counsel failed to interview and call witnesses, including, [R] and [J] who would have testified that Youth's foster brother, [A], had used, possessed, and delivered marijuana on occasions contemporaneous to the Youth's adjudication. [J] would have testified that [A] made incriminating statements the day following Youth's arrest. These

statements exculpate the Youth. Trial counsel's failure to investigate and put forth a coherent, cogent defense renders [the] judgment void."

Youth argues that the evidence presented at the hearing demonstrates that, had youth's attorney made any effort, he could have easily located witnesses—R and J— who would have testified that youth's foster brother, A, with whom youth shared a room at the Elmer home, had smoked and sold marijuana over a significant time period, through at least approximately a year before youth's arrest.[4] Youth further asserts that, if his attorney had interviewed youth's schoolmate, J, the attorney would have learned that A had acted "really nervous" on the day of youth's arrest because A had stashed marijuana in his home and was concerned that the drug-detection dogs would find it. The state argues that the juvenile court correctly concluded that youth failed to prove any prejudice from counsel's failure to interview potential witnesses. The state also argues that the court correctly concluded that trial counsel's failure to interview R was not inadequate assistance of counsel.

For the reasons explained below, we conclude that the juvenile court did not err in concluding that trial counsel's failure to interview R was not inadequate assistance of counsel, and in concluding that the failure to interview J was deficient performance but did not prejudice youth's defense.

At the hearing on youth's petition to set aside, R testified, on behalf of youth, that he saw A smoking marijuana five or six years ago, and that A offered to sell R marijuana during R's freshman year of high school, which was, he thought, in 2010. However, the juvenile court found that youth offered no evidence to show that trial counsel was— or should have been—put on notice that R was a potential witness for the adjudication hearing. Therefore, the court concluded, youth failed to prove that the failure to interview

---

[4] At the hearing on youth's petition to set aside, youth called R as a witness and presented deposition testimony of J. Youth did not provide testimony from other potential witnesses such as his foster brother, A, other schoolmates, or other individuals who were in and out of the Elmer household, who youth contends on appeal could have been helpful to his defense.

R constituted a failure to exercise reasonable professional skill and judgment.[5] Youth does not develop an argument on appeal as to why the court's conclusion about R was in error. *See Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to on recons*, 187 Or App 472, 68 P3d 259 (2003) ("[I]t is not this court's function to speculate as to what a party's argument might be. Nor is it our proper function to make or develop a party's argument when that party has not endeavored to do so itself."). Accordingly, we do not address this point further.

With respect to J, at the hearing on the petition to set aside the judgment, youth offered a deposition transcript of J's testimony as an exhibit. The juvenile court found that, had J been interviewed by trial counsel, he would have provided information consistent with his deposition testimony:

> "[I]t was one day in morning class, and [A] was telling me how his mom had told him that there was going to be some cop dogs—you know, sniff dogs—coming to the house, so she had asked him if he had any—any drugs, to, like, let her know now. And he totally said, 'No, I don't,' but what he had told me is that he did, and he grabbed his drugs and had stashed them, and that he was nervous. He was like really nervous because the dogs were going to his house."

One of the issues at the hearing on the petition to set aside was whether trial counsel had known about J prior to the adjudicatory hearing.[6] The court found by a preponderance of the evidence that trial counsel learned of the potential evidence from J prior to the adjudicatory hearing. Assuming trial counsel knew of J, the court concluded that the failure to interview him would constitute a failure to exercise reasonable skill and judgment. Neither party challenges that determination on appeal.

---

[5] Although it was not necessary given its ruling, the court addressed the prejudice prong of the test in a footnote, stating that R's testimony would not have been particularly helpful at the adjudicatory hearing and would not have had a tendency to affect the result of the prosecution.

[6] Youth testified that he had told his trial counsel to interview J, and there was a note referring to J in trial counsel's file, but counsel could not remember when he created the note. The state argued that trial counsel had learned of J after the adjudicatory hearing.

The juvenile court went on, however to conclude that youth had not shown that the failure to interview J resulted in prejudice to his defense. For that reason, it denied relief on youth's claim relating to the failure to interview J. According to the court, youth provided no evidence as to what A's testimony would have been so as to allow an evaluation of the likely effect of that testimony at the adjudicatory hearing. In addition, according to the court, had J been called as a witness at the adjudicatory hearing, his testimony regarding A's statements would have been inadmissible hearsay. Further, in the court's view, even if J's testimony were admissible evidence, it would have done little to further the defense case.

On appeal, youth argues that, had his counsel interviewed J, he would have discovered A's behavior on the day of the arrest and would have called J to testify as a witness. That evidence, youth contends, would have contributed to counsel being able to provide an alternative explanation for the incriminating evidence found in youth's belongings. The state argues that the juvenile court correctly concluded that youth failed to prove that the omission prejudiced the defense.

We agree with the juvenile court's conclusion that youth failed to prove prejudice. That is, he failed to demonstrate that there was "some likelihood—more than mere possibility, but less than probability—of a different outcome" of the adjudicatory hearing had trial counsel interviewed J.[7] *Baranovich*, 279 Or App at 59 (internal quotation marks omitted). The court correctly determined that J's testimony about A's statements would have been inadmissible hearsay, and youth does not identify any hearsay exception that would have permitted J's testimony. Further, youth failed to provide evidence of what A's testimony would have been had he been called as a witness and the resulting impact of that testimony. Thus, the juvenile court did not err in denying

---

[7] Youth also argues on appeal that he suffered prejudice due to the "cumulative impact" of counsel's multiple failures to properly investigate the case. However, because the juvenile court found a deficiency of counsel in only one respect—failure to interview J—there are not multiple deficiencies to cumulate, and we need not decide whether "cumulative error" analysis could apply.

youth's petition to set aside the judgment based on the failure of trial counsel to interview J.

Affirmed.